[No. S050148. June 26, 1997.]

WM. R. CLARKE CORPORATION, Plaintiff and Respondent, v. SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

CHURCH AND LARSEN, INC., Plaintiff and Respondent, v. SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

BARSOTTI'S INC., Plaintiff and Appellant, v. KELLER CONSTRUCTION CO., LTD., et al., Defendants and Appellants.

GARVIN FIRE PROTECTION SYSTEMS, INC., Plaintiff and Appellant, v. SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

## COUNSEL

Crawford, Bacon, Bangs & Briesemeister, Crawford & Bangs, William J. Crawford, Orville O. Orr, Jr., E. Scott Holbrook, Jr., Daniel Colner, Case, Knowlson, Mobley, Burnett & Luber, Ginsburg, Stephan, Oringher & Richman and Gary S. Mobley for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Roy G. Weatherup, Armando M. Galvan, Rivers & Bower, Hornberger & Criswell, David E. Bower, David Berry and Michael C. Denlinger for Defendants and Appellants.

Bryan Cave, Farella, Braun & Martel, Alan E. Harris, Norma G. Formanek, Busch & Berger, Clark H. Cameron, Knecht, Haley, Lawrence & Smith,

John L. Condrey, Bevington, Jackl & Gropman, Bevington, Jackl & Haas and Anne M. Bevington as Amici Curiae on behalf of Defendants and Appellants.

Tyre, Kamins, Katz & Granof, Herman S. Palarz, Richard J. Kamins, Negele & Gropman and Ted R. Gropman for Plaintiffs and Respondents.

Abdulaziz & Grossbart, Sam K. Abdulaziz, Hendrick, Phillips, Schemm & Salzman, Cook, Brown, Rediger & Prager, Ronald W. Brown, Mantalica & Treadwell and Mark A. Treadwell as Amici Curiae on behalf of Plaintiffs and Respondents and Plaintiffs and Appellants.

## OPINION

**KENNARD, J.**—In recent years, general contractors in California have begun to insert "pay if paid" provisions into their agreements with subcontractors. A pay if paid provision makes payment by the owner to the general contractor a condition precedent[1] to the general contractor's obligation to pay the subcontractor for work the subcontractor has performed.

In other jurisdictions, the majority view is that, if reasonably possible, clauses in construction subcontracts stating that the subcontractor will be paid when the general contractor is paid will not be construed as establishing true conditions precedent, but rather as merely fixing the usual time for payment to the subcontractor, with the implied understanding that the subcontractor in any event has an unconditional right to payment within a reasonable time. (See, e.g., *Koch* v. *Construction Technology, Inc.* (Tenn. 1996) 924 S.W.2d 68; *Power & Pollution Svcs.* v. *Suburban Piping* (1991) 74 Ohio App.3d 89 [598 N.E.2d 69]; *OBS Co., Inc.* v. *Pace Const. Corp.* (Fla. 1990) 558 So.2d 404; *Southern St. Masonry* v. *J.A. Jones Const.* (La. 1987) 507 So.2d 198; *Thos. J. Dyer Co.* v. *Bishop International Engineering Co.* (6th Cir. 1962) 303 F.2d 655.) This approach has been followed in California. (*Yamanishi* v. *Bleily & Collishaw, Inc.* (1972) 29 Cal.App.3d 457, 462-463 [105 Cal.Rptr. 580]; see also *Rubin* v. *Fuchs* (1969) 1 Cal.3d 50, 53 [81 Cal.Rptr. 373, 459 P.2d 925] [stating that "provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction"].) A contract clause that has been construed in this fashion is sometimes referred to as a "pay *when* paid" rather than a "pay

---

[1] In contract law, a "condition precedent" is "either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." (*Platt Pacific, Inc.* v. *Andelson* (1993) 6 Cal.4th 307, 313 [24 Cal.Rptr.2d 597, 862 P.2d 158].)

*if* paid" provision. (See Kirksey, *"Minimum Decencies"—A Proposed Resolution of the "Pay-When-Paid"/"Pay-If-Paid" Dichotomy* (Jan. 1992) Construction Law. 1.)

If it is not reasonably possible to construe the contractual provision as other than a condition precedent, then courts must decide whether public policy permits enforcement of a contractual provision that may result in the subcontractor's forfeiting all right to payment for work performed. The high court of New York has concluded that a true pay if paid provision in a subcontract for construction work is void as against public policy. (*West-Fair Elec.* v. *Aetna Cas. & Sur. Co.* (1995) 87 N.Y.2d 148, 157 [638 N.Y.S.2d 394, 398, 661 N.E.2d 967, 971].) In Illinois, North Carolina, and Wisconsin, pay if paid provisions have been declared void and unenforceable by statute.[2] (770 Ill. Comp. Stat. Ann. 60/21; N.C. Gen. Stat. § 22C-2 (1991); Wis. Stat. § 779.135.) The validity of a true pay if paid provision presents a question of first impression in this court.

We granted review in this case to determine whether a subcontractor may collect on a general contractor's payment bond for work it has performed under a contract containing a pay if paid provision when the owner has not paid the general contractor. We conclude that pay if paid provisions like the one at issue here are contrary to the public policy of this state and therefore unenforceable because they effect an impermissible indirect waiver or forfeiture of the subcontractors' constitutionally protected mechanic's lien rights in the event of nonpayment by the owner. Because they are unenforceable, pay if paid provisions in construction subcontracts do not insulate either general contractors or their payment bond sureties from their contractual obligations to pay subcontractors for work performed.

## I. FACTS

In 1990, the owner of a commercial building in Los Angeles entered into a contract with Keller Construction Co., Ltd. (Keller), as general contractor, for rehabilitation work on the building. Keller in turn entered into subcontracts for this project with, among others, Wm. R. Clarke Corporation, Barsotti's, Inc., Garvin Fire Protection Systems, Inc., and Church and Larsen, Inc. (collectively, the subcontractors). Each subcontract contained a pay if paid provision and three of the four subcontracts also included an

---

[2] A Maryland statute provides that a pay if paid provision "may not abrogate or waive the right of the subcontractor to: [¶] (1) Claim a mechanics' lien; or [¶] (2) Sue on a contractor's bond." (Md. Code Ann., Real Prop. § 9-113.) Similarly, a Missouri statute provides that a pay if paid provision "is no defense to a claim to enforce a mechanic's lien . . . ." (Mo. Rev. Stat. § 431.183.)

addendum reiterating the pay if paid limitation yet also purporting to preserve the subcontractors' mechanic's lien rights and to make those rights the subcontractors' "sole remedy" in the event the owner failed to pay Keller.[3]

At the owner's insistence, and pursuant to the terms of the general contract, Keller obtained a labor and material payment bond from defendant Safeco Insurance Company of America (Safeco) to protect the owner from mechanic's lien claims by subcontractors and material suppliers. The bond recited that it was a payment bond as defined in Civil Code section 3096[4] and that it had been executed to comply with title 15 (Works of Improvement) of the Civil Code.[5] The bond stated that Keller, as principal, and Safeco, as surety, "are held and firmly bound unto any and all persons who perform labor upon or bestow skill or other necessary services on, or furnish materials or lease equipment to be used or consumed in, or furnish appliances, teams, or power contributing to the work described in [the general contract between the owner and Keller], a copy of which contract is or may be attached hereto, and is hereby referred to, in the sum of" $16.5 million. The bond further stated: "Now, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That if the Principal shall pay, or cause to be paid in full, the claims of all persons performing labor upon or bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams or power contributing to such work, then this obligation shall be void; otherwise to remain in

---

[3]The pay if paid provision reads: "Receipt of funds by Contractor from Owner is a condition precedent to the Contractor's obligation to pay Subcontractor under this Agreement, regardless of the reason for Owner's nonpayment, whether attributable to the fault of the Owner, Contractor, Subcontractor or due to any other cause."

As here relevant, the addendum reads:

"1. Contractor shall have no obligation, legal, equitable or otherwise, to pay Subcontractor for Work performed by Subcontractor unless and until Contractor is paid by the Owner for the Work performed by Subcontractor. Furthermore, in the event Contractor is never paid by Owner for Subcontractor's Work, then Subcontractor shall forever be barred from making, and hereby waives, in perpetuity, any claim against Contractor therefor.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"4. Nothing in this Addendum shall be interpreted as limiting Subcontractor's right to enforce its statutory mechanic's lien rights or remedies, if any, against Project property and Subcontractor expressly agrees that such mechanic's lien rights, if any, shall be its sole remedy and means for payment (regardless of whether the value [of] Project property is sufficient or insufficient, for any reason, to satisfy Subcontractor's claim) on account of Work performed by Subcontractor for which Contractor has not been paid by Owner."

[4]Civil Code section 3096 provides: " 'Payment bond' means a bond with good and sufficient sureties that is conditioned for the payment in full of the claims of all claimants and that also by its terms is made to inure to the benefit of all claimants so as to give these persons a right of action to recover upon this bond in any suit brought to foreclose the liens provided for in this title or in a separate suit brought on the bond. An owner, original contractor, or a subcontractor may be the principal upon any payment bond."

[5]Title 15 (Works of Improvement) is found in part 4 of division 3 of the Civil Code, commencing with section 3082.

full force and effect." In the final provision relevant here, the bond stated: "No suit, action or proceeding may be maintained on this bond unless the person claiming hereunder shall previously have either, recorded a mechanic's lien claim pursuant to Title 15, Works of Improvement, of the Civil Code of the State of California or given notice to the Surety on this bond before the expiration of the time prescribed in said statute for recording a lien." The bond was duly executed by the authorized agents of Keller and Safeco, and it was duly recorded.

After substantial work had been completed on the project, the owner stopped making payments to Keller, apparently as a result of the owner's insolvency. Keller then declined to pay the subcontractors, which recorded mechanic's liens and filed separate actions against Safeco seeking recovery under the payment bond. The actions were deemed related and were assigned to the same judge for all purposes. Three of the actions were resolved by summary judgment, the fourth by trial to the court. In each action, the trial court granted judgment for the subcontractors and against Safeco. Safeco appealed from each judgment. After consolidating the appeals, the Court of Appeal affirmed each judgment against Safeco.[6]

## II. ANALYSIS AND RESOLUTION

■ Safeco argues here, as it did in the trial court and in the Court of Appeal, that its obligation under the payment bond never matured because the liability of a surety on a private works payment bond is no greater than that of its principal, and Keller, the principal on the payment bond issued by Safeco, never incurred any obligation to pay the subcontractors for their work because a condition precedent to Keller's contractual obligation to pay the subcontractors—that Keller receive payment from the owner for the subcontractors' work—was never satisfied. Safeco's argument thus assumes the validity of the pay if paid provisions in the subcontracts, under which payment from the owner to Keller was a condition precedent to Keller's obligation to pay the subcontractors. As will appear, we conclude that the assumption is false.

■ Our state Constitution provides: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the

---

[6]We deny the request of subcontractor Wm. R. Clarke Corporation that we take judicial notice of Keller's complaint in a separate action against the surety on a payment bond issued for the benefit of Wm. R. Clarke Corporation's laborers and material suppliers. Taking judicial notice of the complaint would not assist in the resolution of the issues presented here.

We also deny the request of another subcontractor, Church and Larsen, Inc., that we determine whether it is entitled to prejudgment interest.

value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) As this court has said, "The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts 'have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.' [Citation.]" (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 462 [253 Cal.Rptr. 236, 763 P.2d 1326].) "[S]tate policy strongly supports the preservation of laws which give the laborer and materialman security for their claims." (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 827 [132 Cal.Rptr. 477, 553 P.2d 637].)

By law, a subcontractor may not waive its mechanic's lien rights except under certain specified circumstances. Subdivision (a) of Civil Code section 3262 provides: "Neither the owner nor original contractor by any term of their contract, or otherwise, shall waive, affect, or impair the claims and liens of other persons whether with or without notice except by their written consent, and any term of the contract to that effect shall be null and void. Any written consent given by any claimant pursuant to this subdivision shall be null, void, and unenforceable unless and until the claimant executes and delivers a waiver and release. Such a waiver and release shall be binding and effective to release the owner, construction lender, and surety on a payment bond from claims and liens only if the waiver and release follows substantially one of the forms set forth in this section and is signed by the claimant or his or her authorized agent, and, in the case of a conditional release, there is evidence of payment to the claimant. Evidence of payment may be by the claimant's endorsement on a single or joint payee check which has been paid by the bank upon which it was drawn or by written acknowledgment of payment given by the claimant."

Subdivision (d) of Civil Code section 3262 provides that a waiver and release of mechanic's lien rights "shall be null, void and unenforceable unless it follows substantially the following forms in the following circumstances: . . . ." The subdivision then lists the text of four lien waivers: (1) a conditional waiver and release upon progress payment; (2) an unconditional waiver and release upon progress payment; (3) a conditional waiver and release upon final payment; and (4) an unconditional waiver and release upon final payment. Thus, under our mechanic's lien law, waiver and release of mechanic's lien rights is permitted only in conjunction with payment, or a promise of payment, and a conditional release is effective only if the claimant is actually paid. (See Cal. Mechanics' Liens and Other Remedies (Cont.Ed.Bar 1988) § 4.21, p. 200.)

Safeco argues that a pay if paid provision in a construction subcontract does not violate Civil Code section 3262's anti-waiver provisions

because, under Civil Code section 3140 (limiting a subcontractor's recovery on a mechanic's lien claim to "such amount as may be due him according to the terms of his contract"), mechanic's lien remedies are available only to subcontractors whose payment rights have vested under the terms of their contracts. Absent a contractual right to payment, a subcontractor has no mechanic's lien remedy to enforce. In Safeco's view, a mechanic's lien is merely one *remedy* that is granted to subcontractors to enforce a *contractual* right to payment. Absent such a contractual right, there can be no remedy. Thus, according to Safeco, the subcontractors have not *waived* their mechanic's lien remedy. Rather, they never acquired the contractual payment right that is a necessary precondition to the enforcement of any mechanic's lien remedy.

Strictly speaking, Safeco is correct. A pay if paid provision in a construction agreement does not take the *form* of a waiver of mechanic's lien rights. Yet "[t]he law respects form less than substance" (Civ. Code, § 3528), and a pay if paid provision is in substance a waiver of mechanic's lien rights because it has the same practical effect as an express waiver of those rights.

The New York high court put it this way: "As the owner here has become insolvent, the owner may never make another contract payment to the general contractor. Because the lack of future payments by the owner is virtually certain, [the plaintiff subcontractor's] right to receive payment has been indefinitely postponed, and plaintiff has effectively waived its right to enforce its mechanics' liens. The waiver has occurred by operation of the pay-when-paid provision because mechanics' liens may not be enforced until a debt becomes due and payable." (*West-Fair Elec.* v. *Aetna Cas. & Sur. Co., supra,* 87 N.Y.2d at p. 158 [638 N.Y.S.2d at p. 398, 661 N.E.2d at p. 971].)

We may agree with Safeco that a pay if paid provision is not precisely a waiver of mechanic's lien rights and yet conclude that a pay if paid provision is void because it violates the public policy that underlies the anti-waiver provisions of the mechanic's lien laws. The Legislature's carefully articulated anti-waiver scheme would amount to little if parties to construction contracts could circumvent it by means of pay if paid provisions having effects indistinguishable from waivers prohibited under Civil Code section 3262.

Safeco advances several arguments against the conclusion that pay if paid provisions in construction subcontracts are void as against public policy. We consider these arguments in turn.

Safeco argues that it is established law in this state that pay if paid provisions in construction subcontracts are valid and enforceable. The authority Safeco cites for this proposition is *Michel & Pfeffer* v. *Oceanside Properties, Inc.* (1976) 61 Cal.App.3d 433 [132 Cal.Rptr. 179], which we find to

be distinguishable. There, under a modification of the subcontractor's agreement with the general contractor, the subcontractor agreed to accept as payment for the final 15 percent of the contract price a pro rata interest in funds the general contractor would receive from either a secured promissory note or the proceeds of an intended sale of the project property. The Court of Appeal concluded that under this agreement the subcontractor had no right to the final payment until the general contractor received funds from one of the two designated sources. (*Id.* at p. 441.) The Court of Appeal further reasoned that because the general contractor had not received funds from either source, the general contractor was not in default on its agreement, and the subcontractor therefore could not yet recover its final payment either by proceeding against the surety on a payment bond or by foreclosing a mechanic's lien on the project property. (*Ibid.*)

Although the agreement provision at issue in *Michel & Pfeffer* v. *Oceanside Properties, Inc., supra,* 61 Cal.App.3d 433, raises some of the same concerns as a pay if paid provision, it was not such a provision. Nothing in the Court of Appeal's opinion suggests that the final payment to the subcontractor could be delayed indefinitely, nor did the Court of Appeal consider whether, if so, the provision there at issue violated the public policy underlying the anti-waiver provisions of Civil Code section 3262. Accordingly, we do not find the Court of Appeal's decision in that case relevant or helpful in deciding the issue presented here, and Safeco's reliance upon it is misplaced.

In defense of pay if paid provisions, Safeco argues strenuously that the public policy against waivers of mechanic's lien rights is not the only public policy at issue, and that this court should consider also the fundamental public policy served by freedom of contract. Safeco argues that pay if paid provisions should be held valid because they permit general contractors and subcontractors to allocate the risk of owner insolvency in a mutually agreeable manner.

Safeco's argument assumes that the sole purpose and effect of a pay if paid provision in a subcontract is to allocate the risk of owner insolvency. But the provisions at issue here were not so limited. As noted above, the pay if paid provision in each subcontract made the owner's payment to Keller a condition precedent of Keller's obligation to pay the subcontractor "regardless of the reason for Owner's nonpayment, whether attributable to the fault of the Owner, Contractor, Subcontractor or due to any other cause."

In any event, we find Safeco's "freedom of contract" argument unpersuasive in this context. By closely and carefully circumscribing subcontractors'

freedom to waive mechanic's lien rights, and by forbidding waivers not accompanied by payment, or a promise of payment, the Legislature has already determined that there are policy considerations here that override the value of freedom of contract. We merely recognize and enforce that legislative policy determination.

Moreover, it is doubtful that enforcement of the pay if paid provisions at issue in this case would be fully consistent with the intent of the contracting parties. All but one of the subcontracts at issue here contained an addendum purporting to reserve mechanic's lien rights and remedies. This addendum is evidence of a contractual intent to allow the subcontractors, in the event of the owner's default in its payment obligations to the general contractor, to obtain payment for work performed by foreclosing mechanic's liens on the project property. Yet the pay if paid provision makes this impossible, because the amount due and unpaid under the subcontract is the measure of the subcontractors' mechanic's liens. Had the subcontractors understood that this reservation of rights was illusory (because under Civil Code section 3140 their recovery on their mechanic's lien claims would be limited to amounts due under their subcontracts), they might never have entered into the subcontracts. In short, the allocation of risks and remedies contemplated by the subcontracts appears to be a statutory impossibility, and this lawsuit must necessarily determine which contracting party will have its expectations frustrated.

In this court, in its consolidated reply brief on the merits, Safeco for the first time has taken the position that "it is not necessary for any party improving real property to establish the validity of a contract claim in order to have a mechanic's lien" and that "[t]he reference in the mechanic's lien laws to the contract price merely is used to set a limit on the amount of a mechanic's lien, rather than to create a condition precedent to the validity of the lien." Safeco appears to argue, in other words, that pay if paid provisions do not preclude the assertion of mechanic's lien claims, and therefore are not against public policy. Safeco cites no authority for this assertion, which is inconsistent with the position Safeco took initially in this court in its brief on the merits. We reject this new position as being contrary to the language of Civil Code section 3140, which provides that a subcontractor's mechanic's lien claim is for "only such amount as may be *due* him *according to the terms of his contract*" (italics added). This statutory language does not merely refer to the contract price; rather, it refers to and incorporates all of "the terms of [the] contract" to determine the amount that is "due" under the subcontract, making this contractually due amount the measure of the subcontractor's mechanic's lien claim.

Safeco's argument fails in another respect as well. Were we to adopt Safeco's proposed construction of Civil Code section 3140, and thereby to

conclude that the pay if paid provision merely bars the subcontractors' contract claims against Keller, while fully preserving their mechanic's lien claims (and thus not violating the public policy underlying the anti-waiver provisions of the mechanic's lien laws), this conclusion would not assist either Safeco or Keller because both are obligated by the payment bond to pay all valid mechanic's lien claims. If the subcontractors have valid mechanic's lien claims, as posited by Safeco's argument, then those claims are necessarily enforceable against the payment bond.

Seeking to escape from this inexorable logic, Safeco argues that it incurred no liability on the bond because a surety's obligation on a payment bond is only to answer for the default of its principal. As Safeco observes, the very definition of a surety is "one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." (Civ. Code, § 2787.) Absent a default by the principal, the surety incurs no liability. In this connection, Safeco relies also on Civil Code section 2809, which states that a surety's obligation "must be neither larger in amount nor in other respects more burdensome than that of the principal." Safeco argues that its obligation under the payment bond is simply to answer for any default by Keller in the performance of its contractual payment obligations to the subcontractors. Because payment by the owner was a condition precedent to Keller's contractual payment obligations to the subcontractors, and because that condition was not met, Keller was not in default of any contractual payment obligation to the subcontractors. Therefore, reasons Safeco, as a surety it incurred no liability on the payment bond.

The fallacy of this reasoning (apart from its erroneous assumption that the pay if paid provisions are valid and enforceable and its reliance on a strained construction of Civil Code section 3140) is that it considers only Keller's contractual liability under the subcontracts, while ignoring Keller's separate and independent liability as principal and co-obligor on the payment bond. Keller's contract with the owner required it to obtain a payment bond, the purpose of which is "to create an additional fund or security for the satisfaction of lien claimants [citations], and also to limit the owner's liability to the contract price [citation] . . . ." (*Sudden Lumber Co.* v. *Singer* (1930) 103 Cal.App. 386, 390 [284 P. 477]; accord, *Simpson* v. *Bergmann* (1932) 125 Cal.App. 1, 12 [13 P.2d 531].) The payment bond at issue here refers to Keller's contract with the owner, but makes no mention of the subcontracts. The operative language of the bond states that "[Keller], as Principal, and [Safeco], as Surety, are held and firmly bound unto any and all persons who perform labor upon . . . the work described in" the general contract.

Keller's obligation under the bond is measured by the terms of the bond and the statutes referenced in the bond. (*Southern Heaters Corp.* v. *N. Y. Cas.*

*Co.* (1953) 120 Cal.App.2d 377, 379 [260 P.2d 1048].) Under the bond, Keller assumed an obligation to pay the lien claims of any and all persons, including subcontractors, that performed work on the project identified in the general contract. Liability on the bond thus extends not only to those with whom Keller has entered into subcontracts, but to "everyone who has a right to claim a lien" (*Myers* v. *Alta Construction Co.* (1951) 37 Cal.2d 739, 743 [235 P.2d 1]; see also *Hammond Lumber Co.* v. *Willis* (1915) 171 Cal. 565, 568-569 [153 P. 947]; *Union Asphalt, Inc.* v. *Planet Ins. Co.* (1994) 21 Cal.App.4th 1762 [27 Cal.Rptr.2d 371]). And the liability on the bond to pay mechanic's lien claims fell equally on Keller as principal and Safeco as surety. (See, e.g., Code Civ. Proc., § 996.410, subd. (a) [stating that "[t]he beneficiary may enforce the liability on a bond against both the principal and sureties"].) Thus, the default for which Safeco promised to answer was Keller's default *under the bond* and not Keller's default under the subcontracts.

We find nothing to the contrary in *Flickinger* v. *Swedlow Engineering Co.* (1955) 45 Cal.2d 388 [289 P.2d 214] (*Flickinger*) or in *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141 [308 P.2d 713] (*Lewis*).

*Flickinger, supra,* 45 Cal.2d 388, concerned a subcontract for work on a state highway project. The subcontractor was a licensed contractor who later assigned the benefits of the contract to a partnership composed of himself and another licensed contractor. After the work was completed, the general contractor sued both the partnership and the individual partners, who responded with a cross-complaint against the general contractor. The trial court entered judgment that neither party take anything on their opposing claims, and this judgment became final. The original subcontractor then sued the general contractor and its payment bond sureties, arguing a legal theory of recovery different from the one he had unsuccessfully urged by cross-complaint in the earlier action. The trial court granted judgment for the subcontractor, and the general contractor appealed. This court reversed, holding that the subcontractor could and should have asserted any claim arising from the subcontract in the earlier action, and that the claim was therefore barred.

Rejecting the subcontractor's argument that this bar was not good against the payment bond surety, who was not a party to the earlier action, this court stated: "[A]ny right which plaintiff might have had to recover upon the bond was necessarily dependent upon plaintiff's right to recover upon his contract with [the general contractor]. While he had the option to file a cross-complaint on the bond and thereby bring in the surety as a party in the prior action [citation], he was clearly compelled to assert by way of counterclaim,

in said prior action, any right which he had against [the general contractor] under the contract which was the basis of [the general contractor]'s prior action. [Citation.] Having omitted to assert directly in that action his alleged rights under the contract, but having elected to assert his alleged rights upon an alleged acount stated with the resulting adverse final judgment on the merits, plaintiff is now barred from relitigating his alleged rights under the contract as the basis for an action against [the general contractor] as the principal on the bond. And as such defense to this action is available to [the general contractor] as the principal, it is likewise available to . . . the surety on the bond." (*Flickinger, supra,* 45 Cal.2d 388, 394.)

In *Lewis, supra,* 48 Cal.2d 141, a state road construction contract prohibited the general contractor from subcontracting more than 50 percent of the work. Attempting to circumvent this requirement, the general contractor purported to enter into separate equipment rental and subcontract agreements with a partnership that did not have a contractor's license. Later, the partnership sued the general contractor and its payment bond sureties for money due under the rental agreements. The trial court denied recovery. On the partnership's appeal, this court affirmed, relying on Business and Professions Code section 7031, which bars unlicensed contractors from bringing any action for compensation for work requiring a license. After concluding that the partnership could not recover from the general contractor because the rental agreement was a sham and the partnership was actually seeking recovery for work requiring a license, this court considered the partnership's claim against the payment bond sureties. This court noted that Business and Professions Code section 7031 bars not only an unlicensed contractor's action for breach of contract, but also its action to foreclose a mechanic's lien. This court then stated: "The obligation of the sureties on defendant's bonds was not to pay for labor merely by virtue of the fact that it had been expended on [the public work]. It was an obligation to pay only if plaintiff established, without reference to the bond, a legal and valid claim for compensation." (*Lewis, supra,* 48 Cal.2d 141, 155, citing, inter alia, *Flickinger, supra,* 45 Cal.2d 388, 393-394.)

■ *Flickinger, supra,* 45 Cal.2d 388, and *Lewis, supra,* 48 Cal.2d 141, both stand for the proposition that a claimant on a labor and material payment bond must "establish[], without reference to the bond, a legal and valid claim for compensation" (*id.* at p. 155). That proposition is in no way inconsistent with our conclusion here that the payment bond obligates Keller to pay the subcontractors' valid mechanic's lien claims, because a mechanic's lien claim is "a legal and valid claim for compensation." Where the bond is conditioned, as is the Safeco bond at issue here, on the payment of mechanic's lien claims on a particular private work, *Flickinger* and *Lewis*

require only that a claimant on the bond establish, without reference to the terms of the bond, a legal and valid mechanic's lien claim for that project. Neither *Flickinger* nor *Lewis,* nor any other case that has come to our attention, has addressed Safeco's hypothesized situation, in which a subcontractor is able to establish, without reference to the terms of a payment bond, a legal and valid mechanic's lien claim but not a legal and valid claim for breach of contract.

One more appellate decision requires our attention. In *Kalfountzos* v. *Hartford Fire Ins. Co.* (1995) 37 Cal.App.4th 1655 [44 Cal.Rptr.2d 714] (*Kalfountzos*), the Court of Appeal applied the rule of law established in *Flickinger, supra,* 45 Cal.2d 388, and *Lewis, supra,* 48 Cal.2d 141. In *Kalfountzos,* the issue presented was whether a surety on a public works payment bond could assert the defenses and setoffs of a principal whose corporate powers had been suspended for nonpayment of franchise fees. Concluding that the surety could assert the defenses of its principal, the Court of Appeal stated: "The surety must pay on the bond only if the claimant establishes, without reference to the bond, *a legal obligation on the part of the principal to pay.*" (*Kalfountzos, supra,* 37 Cal.App.4th 1655, 1659, italics added.) The italicized language goes beyond the rule of law declared in *Flickinger, supra,* 45 Cal.2d 388, and *Lewis, supra,* 48 Cal.2d 141, on which the Court of Appeal purported to rely, because it requires the claimant on the bond to establish, without reference to the bond, a claim for compensation that is not only legal and valid, but also one that the bond principal would otherwise be obligated to pay. To the extent that *Kalfountzos* implies that the principal on a payment bond incurs no liability on the bond unless it has a separate payment obligation, contractual or otherwise, the statement is incorrect and is hereby disapproved. ▉ When a general contractor executes a statutory labor and material payment bond as principal, the obligation on the bond is not limited to the subcontractors and material suppliers with which the general contractor has executed valid contracts, but extends also to lower tier subcontractors and material suppliers with which the general contractor has no privity of contract, and to which the general contractor owes no payment obligation apart from the bond, provided only that they have valid lien claims for that project. (*Myers* v. *Alta Construction Co., supra,* 37 Cal.2d 739, 743; *Hammond Lumber Co.* v. *Willis, supra,* 171 Cal. 565, 568-569; *Union Asphalt, Inc.* v. *Planet Ins. Co., supra,* 21 Cal.App.4th 1762.)

## III.   CONCLUSION

Having concluded that a general contractor's liability to a subcontractor for work performed may not be made contingent on the owner's payment to

the general contractor, we conclude that Keller was liable to the subcontractors under their subcontracts for the work they performed and that Safeco, as Keller's surety, was likewise liable on the payment bond.

The judgment of the Court of Appeal is affirmed, and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Werdegar, J., and Brown, J., concurred.

CHIN, J.—I dissent. The contractor and the subcontractors agreed that they would assume equally the risk the owner would not be able to pay for their work. The majority voids this agreement and forces the contractor to bear the risk not only that it will receive no payment for its own work but also that it will have to pay the subcontractors out of its own pocket. The majority accomplishes this end by (1) declaring the contractual provision at issue—the "pay if paid" clause—invalid as against public policy because it supposedly indirectly waives mechanic's lien rights, even though the subcontractors expressly did *not* waive those rights; and (2) finding, for the first time, a surety may be liable under a surety bond even though the principal has breached no contract or otherwise defaulted on any underlying obligation. I disagree. The parties entered into these agreements freely. We should not allow the subcontractors to repudiate them now.

The pay if paid clause is not contrary to public policy for the reason that, unlike a mechanic's lien, which provides a remedy against the *property*, the pay if paid clause only regulates the relationship between the contractor and the subcontractors. The contractual relationship between those entities does not affect, and is not affected by, their mutual constitutionally protected mechanic's lien rights against the property. The parties may allocate the risk among themselves as they choose while maintaining their mechanic's lien remedies.

Moreover, the surety is also not liable to the subcontractors if, as here, the contractor is not liable. "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal . . . ." (Civ. Code, § 2809.) The surety "promise[d] to answer for the debt, default, or miscarriage of" the contractor, not the owner. (Civ. Code, § 2787.) But here the owner defaulted, not the contractor. The bond does not guarantee against the owner's default.

## I. FACTS AND PROCEDURAL HISTORY

In 1990, the owner of a commercial building in Los Angeles contracted with Keller Construction Co., Ltd. (Keller or the contractor), for rehabilitation work on the building. Keller in turn entered into subcontracts with Wm.

R. Clarke Corporation, Barsotti's, Inc., Garvin Fire Protection Systems, Inc., Church and Larsen, Inc. (collectively, the subcontractors), and others.

Each subcontract involved in this litigation contained what is called a "pay if paid" provision: "Receipt of funds by Contractor from Owner is a condition precedent to the Contractor's obligation to pay Subcontractor under this Agreement, regardless of the reason for Owner's nonpayment, whether attributable to the fault of the Owner, Contractor, Subcontractor or due to any other cause."

The subcontracts also contained "Addendum 1" stating, as relevant: "Contractor has been informed that the Owner of the [property] has not obtained, and may not obtain in the future, a construction loan to fund the costs of construction. Subcontractor also acknowledges that Contractor has made no representation as to the financial responsibility of the Owner, or of its ability to fund the costs of construction.

"Notwithstanding anything stated elsewhere in the subcontract or Contract Documents to the contrary, Subcontractor shall assume the risk that if [*sic*] the Owner does not, for any reason (including but not limited to unavailability of funds, default by Contractor of its obligations under its General Contract, or otherwise) pay Contractor money owing to it for the work, materials, equipment or services ('Work') provided by Subcontractor. Accordingly, Subcontractor agrees that:

"1. Contractor shall have no obligation, legal, equitable or otherwise, to pay Subcontractor for Work performed by Subcontractor unless and until Contractor is paid by the Owner for the Work performed by Subcontractor. Furthermore, in the event Contractor is never paid by Owner for Subcontractor's Work, then Subcontractor shall forever be barred from making, and hereby waives, in perpetuity, any claim against Contractor therefor.

"2. Subcontractor shall not seek payment from Contractor for, and shall forever refrain from instituting any legal or equitable action for collection of, money and/or compensation for Work performed by Subcontractor for which Contractor is not paid [by] Owner.

". . . . . . . . . . . . . . . . . . . . . . . .

"4. Nothing in this Addendum shall be interpreted as limiting Subcontractor's right to enforce its statutory mechanic's lien rights or remedies, if any, against Project property and Subcontractor expressly agrees that such mechanics lien rights, if any, shall be its sole remedy and means for payment

(regardless of whether the value [of] Project property is sufficient or insufficient, for any reason, to satisfy Subcontractor's claim) on account of Work performed by Subcontractor for which Contractor has not been paid by Owner."[1]

At the owner's insistence, and under the general contract's terms, Keller obtained from Safeco Insurance Company of America (Safeco) a "payment bond" for "private work" as "defined in section 3096 of the Civil Code." Under the bond, Keller, as the principal, and Safeco, as the surety, were "bound unto any and all persons who perform labor upon or bestow skill or other necessary services on, or furnish materials . . . contributing to the work described" in the underlying contract between the contractor and the owner. The bond was executed to comply with "Title 15, Works of Improvement, of the Civil Code," and it "inure[d] to the benefit of any and all persons who perform labor upon or bestow skill or other necessary services on, or furnish materials . . . contributing to the work" under the contract. Before filing an action on the bond, a claimant must have recorded a mechanic's lien or otherwise given Safeco notice as provided in the bond. The bond was recorded.

After substantial work had been completed on the project, the owner stopped making payments to Keller, apparently because of owner insolvency. Keller then stopped work, sent out notices of the owner's default, and declined to pay the subcontractors. Keller sued the owner. A declaration of Keller's manager states that Keller had reached a partial settlement and was tendering payment to the subcontractors from that settlement on a pro rata basis. The subcontractors recorded mechanic's liens and filed separate actions against Safeco seeking recovery under the payment bond.

The trial court granted judgment for the subcontractors and against Safeco in each action. Safeco appealed. The Court of Appeal affirmed. It held the subcontractors' express reservation of mechanic's liens rights in the addendum, of which Safeco was aware, amounted to an assumption of greater liability than that which the general contractor owed. The court concluded "that an action to recover on a payment bond is an action to enforce a mechanic's lien right and, therefore, a remedy expressly reserved by the subcontractors who are parties to these appeals." "Stated otherwise," the

---

[1]The Court of Appeal opinion explains further, "When Barsotti's started work on the project, this Addendum was not part of its contract and no one at Barsotti's ever signed Addendum 1. Keller and Barsotti's nevertheless treated their relationship as controlled by Addendum 1 and, on this appeal, Safeco and Keller both assert that Barsotti's is bound by Addendum 1. For these reasons, we treat all four subcontractors the same vis-à-vis their contractual rights and obligations." In this court, Barsotti's, Inc., expressly agrees with this assessment.

court held, "Safeco's acceptance of the contract documents and the reservation of the subcontractors' mechanic's lien remedy rights was a waiver of whatever rights Safeco might otherwise have had under [Civil Code] section 2809." We granted Safeco's petition for review.

## II.  DISCUSSION

### A.  *Enforceability of the Pay if Paid Clause*

I agree fully with the majority that the constitutionally protected right of persons bestowing labor or furnishing material on property to "have a lien upon the property" for the value of that labor or material is fundamental and unwaivable, and that the mechanic's lien laws are to be liberally construed for the protection of laborers and suppliers. (Cal. Const., art. XIV, § 3; see maj. opn., *ante*, at pp. 888-889.)

The pay if paid clause, however, does not implicate mechanic's lien rights; rather, it defines the relationship between two parties—the general contractor and the subcontractor—who bestowed labor or furnished material on the property. It merely provides that the signatory parties equally assume the risk that the owner might not pay and that the mechanic's lien remedy might prove inadequate. It does not directly or indirectly waive the mechanic's lien remedy of either signatory *"upon the property."* (Cal. Const., art. XIV, § 3, italics added.) Indeed, the addendums specifically provided that the contract did *not* limit the subcontractors' mechanic's lien rights. The subcontractors' rights against the property and their rights relative to the general contractor are independent of each other. In this case, the mechanic's lien remedy was insufficient to make either the contractor or the subcontractors whole, but that was due to the owner's insolvency, not because of the pay if paid clause.

The majority finds the pay if paid clause does indeed waive mechanic's liens rights, despite the express contractual language that it does not, because of Civil Code section 3140 (section 3140): "Any original contractor or subcontractor shall be entitled to recover, upon a claim of lien recorded by him, only such amount as may be due him according to the terms of his contract . . . ." The majority argues that, if the pay if paid clause is given effect, the amount due under the contract would be zero because of the owner's default. Therefore, the subcontractors would be entitled to recover on their liens the same zero amount, which, the majority concludes, effectively amounts to a waiver of mechanic's liens rights and is against public policy.

The majority misinterprets section 3140 in its effort to invalidate the pay if paid clause. It reads the statute as providing that the contractual language

allocating the risk that the owner will not pay eliminates all mechanic's liens against the property. That interpretation is illogical. Why should the owner's default protect that same owner from mechanic's liens? The answer is, of course, that it should not. But this answer means only that we should interpret the statute reasonably, not that we should use it to invalidate the pay if paid clause.

Section 3140 merely helps establish the amount of the lien by limiting the value of the services or material to that specified in the contract. If a subcontractor (or original contractor) contracts for work at an agreed price of, say, $5,000, that agreed price should and, under section 3140, does, establish the value of the work and thus the amount of the lien. The subcontractor may not claim the value was really $10,000 and place a lien for that amount. Section 3140 codifies the rule we have long adopted that "If there is a valid contract, the contract price measures the limit of the amount of the liens which can be acquired against the property by laborers and materialmen." (*Roberts* v. *Spires* (1925) 195 Cal. 267, 270 [232 P. 708, 37 A.L.R. 763]; see also *Roystone Co.* v. *Darling* (1915) 171 Cal. 526, 531-533, 537 [154 P. 15].)

Section 3140 reasonably, logically, and constitutionally limits the "value" (Cal. Const., art. XIV, § 3) of the labor or material to the "amount" established in the contract. I see no reason to read it as doing more, and good reason not to. The broad constitutional guarantee that laborers and suppliers "shall have a lien upon the property upon which they have bestowed labor or furnished material for the *value* of such labor done and material furnished" (Cal. Const., art. XIV, § 3, italics added) makes clear that the terms of a contract allocating risk of default may not limit the amount of the lien. Rather, the lien amount is based on the unpaid "value" of that labor or material. We should construe section 3140 consistently with this constitutional mandate, not as an illogical provision at odds with it.

A " 'statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].) Moreover, we should assume the Legislature intended the statute to be constitutional "and construe it to avoid 'serious' doubts as to its constitutionality if that can be done 'without doing violence to the reasonable meaning of the language.' " (*San Francisco Taxpayers Assn.* v. *Board of Supervisors* (1992) 2 Cal.4th 571, 581 [7 Cal.Rptr.2d 245, 828 P.2d 147].) An interpretation of section 3140 that would cause a private contractual agreement between contractor and subcontractor to limit mechanic's lien rights—other than establishing the "amount" or "value" of the labor or

materials—would be utterly illogical. (Why should an agreement between the contractor and subcontractor limit their mutual rights against the property?) That interpretation would give rise to a very serious doubt as to section 3140's constitutionality.

My interpretation does no violence to the statutory language. The key phrase—"such amount as may be due him according to the terms of his contract"—can easily be construed as referring to the dollar amount due the subcontractor for services actually performed according to the terms of the contract, without reference to possible default by either the contractor or the owner. The contract amount is "due" to the subcontractor even if he does not actually receive it because of owner insolvency.

Given this interpretation, section 3140 does not prevent us from evaluating the pay if paid clause on its own merits without reference to mechanic's lien rights, which are completely separate. I see no basis on which we could categorically invalidate all such clauses. A strong public policy favors lien claimants against the property on which they have bestowed their labor or material, but no policy favors any particular claimants over any others. This record shows the parties entered into their agreements voluntarily with their eyes open. Indeed, the addenda expressly stated the general contractor had been informed that the owner had "not obtained, and may not obtain in the future, a construction loan to fund the costs of construction." The subcontractors expressly acknowledged that the contractor had "made no representation as to the financial responsibility of the Owner, or of its ability to fund the costs of construction." We have stressed the "strong policy considerations favoring the enforcement of freely negotiated" contractual provisions in other contexts. (*Nedlloyd Lines B. V.* v. *Superior Court* (1992) 3 Cal.4th 459, 462 [11 Cal.Rptr.2d 330, 834 P.2d 1148] [upholding choice-of-laws clause].) We should also enforce this contractual provision.

The clause is not totally one-sided, with one side risking all and the other nothing. Neither the contractor nor the subcontractors will be paid in full. Indeed, each is receiving payment pro rata from the inadequate funds available from the owner and property. If we refuse to enforce pay if paid clauses, subcontractors will bear no risk of owner insolvency, while contractors must bear a double risk: that they will receive no payment for their own work, and that they will have to pay the subcontractors out of their own pockets. We should not categorically prohibit parties from contractually allocating the risk as they did here.[2]

Decisions from other states do not support the majority's result. The majority relies on *West-Fair Elec.* v. *Aetna Cas. & Sur. Co.* (1995) 87 N.Y.2d

---

[2]In some cases, the clause might be unenforceable for specific reasons such as misrepresentation, unconscionability, or the like. For example, the pay if paid clause provides the

148 [638 N.Y.S.2d 394, 661 N.E.2d 967], which invalidated a similar pay if paid clause under New York's mechanic's lien laws. As New York's lien law is different from California's, however, we can easily distinguish that case. The court explained in that case that New York's "Lien Law also provides that subcontractors may file and enforce their mechanics' liens against the persons liable for the debt giving rise to the lien, *in addition to rights in the real property* [citations]." (661 N.E.2d at pp. 971-972, italics added.) In California, by contrast, the mechanic's lien is "upon the property." (Cal. Const., art. XIV, § 3.) Enforcing the pay if paid clause would infringe on New York's lien law; it does not infringe on California's. Citing "traditional notions of the freedom to contract," the Virginia Supreme Court recently *upheld* pay if paid clauses. (*Galloway Corp.* v. *S.B. Ballard Const. Co.* (1995) 250 Va. 493 [464 S.E.2d 349, 354].)[3]

In short, while the subcontractors may not waive their rights to liens against property, they still have those rights. The parties should be allowed to agree mutually to share the risk of owner nonpayment. The subcontractors' arguments that the pay if paid clause is against public policy should be directed to the Legislature, not this court. (See *ante*, fn. 3.)

B. *Liability Under the Bond*

The subcontracts expressly provide Keller need not pay the subcontractors if the owner did not. Nevertheless, the majority also concludes Keller and the surety were obligated to pay the mechanic's liens under the bond. This conclusion effectively voids the pay if paid clause, although in a roundabout way. Again, I disagree. A bond does not *create* a contractual obligation to a third party, but rather obligates the principal, and the surety as guarantor, to perform an underlying contractual obligation. If, as here, Keller has breached no contractual obligation to anyone, neither it nor the surety is liable under the bond. "A surety . . . is one who promises to answer for the debt, default, or miscarriage of another . . . ." (Civ. Code, § 2787.) "A surety who has assumed liability for payment . . . is liable to the creditor immediately *upon the default of the principal* . . . ." (Civ. Code, § 2807,

---

contractor would not have to pay if the owner did not pay, even if the reason was "attributable to the fault of the . . . Contractor . . . ." This language is not before us, as all agree the nonpayment was the owner's fault, but the question would be different if the nonpayment was the contractor's fault. I express no view on that question. That issue is not before us.

[3]The majority also notes that three states have declared pay if paid clauses unenforceable by statute. (Maj. opn., *ante*, at p. 886.) In 1993, a bill was introduced in the California Legislature to do the same. (Assem. Bill No. 1981 (1993-1994 Reg. Sess.) [to add Civil Code section 3267.5, providing, as relevant, "Any provision of a contract . . . between a contractor and a subcontractor . . . which conditions payment of the subcontractor . . . upon receipt of payment by the contractor from any third person, is contrary to the public policy of this state, void, and unenforceable."].) The bill failed to pass.

italics added.) Moreover, because a surety merely answers for the liability of another, it is a bedrock principle that "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal . . . ." (Civ. Code, § 2809.)

The cases make clear that the surety's obligation is no greater than that of the principal under the underlying contract. In *Bloom* v. *Bender* (1957) 48 Cal.2d 793, 803 [313 P.2d 568], we explained "that a surety is not liable where the principal does not incur any obligation under the basic contract (*Atowich* v. *Zimmer* (1933), 218 Cal. 763, 769 [25 P.2d 6]), or where the principal has fully performed his contract obligations [citation]," although the surety may be liable even if the principal is discharged without fully performing the contract obligation "where the principal incurs an actual obligation." (See also *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 636, fn. 4 [147 Cal.Rptr. 486, 581 P.2d 197] [finding an exception when the statute of limitations had expired as to the principal but not the surety, even though "the general principle, codified in Civil Code section 2809, *is* that the liability of principal and surety are commensurate" (original italics)]; *U.S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65] ["since the liability of a surety is commensurate with that of the principal, where the principal is not liable on the obligation, neither is the guarantor"]; *Flickinger* v. *Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 394 [289 P.2d 214]; *Royster Construction Co.* v. *Urban West Communities* (1995) 40 Cal.App.4th 1158, 1168-1169 [47 Cal.Rptr.2d 684]; *Kalfountzos* v. *Hartford Fire Ins. Co.* (1995) 37 Cal.App.4th 1655, 1659 [44 Cal.Rptr.2d 714]; *Michel & Pfeffer* v. *Oceanside Properties, Inc.* (1976) 61 Cal.App.3d 433, 441 [132 Cal.Rptr. 179].)

While exceptions to this general principle exist, such as surety liability even if the statute of limitations had expired as to the principal, a basic prerequisite to liability is that the principal have "incur[red] an actual obligation." (*Bloom* v. *Bender, supra,* 48 Cal.2d at p. 803.) Here, the contractor never incurred an actual obligation for which the surety has promised to answer. " '[T]he surety merely lends its credit so as to guarantee payment in the event that the principal defaults. In the absence of default, the surety has no obligation.' (1 Cal. Insurance Law & Practice (Matthew Bender, 1986) Surety Bonds Compared to Insurance, § 12.13 [2], p. 12-35, fn. deleted.)" (*Schmitt* v. *Insurance Co. of North America* (1991) 230 Cal.App.3d 245, 257 [281 Cal.Rptr. 261].) *"Upon the default of the principal,* the surety is liable to the named obligee and to unpaid subcontractors, laborers, equipment renters, and material suppliers as third-party beneficiaries. [¶] A bond issued by a surety . . . represents nothing more than an

undertaking to indemnify a person or the public against losses resulting *from acts of the principal.*" (8 Miller & Starr, Cal. Real Estate (2d ed. 1990) Mechanics' Lien, § 26:77, p. 600, italics added, fns. omitted.) The principal here did not default; the losses resulted from acts of the owner, not the principal.

The bond did not create an obligation on the part of the principal (or surety) divorced from any underlying obligation under either the general contract or any of the subcontracts. "The surety must pay on the bond only if the claimant establishes, *without reference to the bond,* a legal obligation on the part of the principal to pay. (*Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 155 [308 P.2d 713].) [¶] . . . [¶] The 'obligation,' as referred to in Civil Code section 2809 and *U.S. Leasing Corp.* [v. *duPont, supra,* 69 Cal.2d at p. 290], is the obligation the principal . . . originally undertakes as to the creditor," i.e., "the obligation was defined in the subcontract . . . ." (*Kalfountzos v. Hartford Fire Ins. Co., supra,* 37 Cal.App.4th at p. 1659, italics added; see also *Royster Construction Co. v. Urban West Communities, supra,* 40 Cal.App.4th at pp. 1168-1169 [quoting much of this language].)

The majority's response to *Kalfountzos v. Hartford Fire Ins. Co., supra,* 37 Cal.App.4th at page 1659 (and, presumably, *Royster Construction Co. v. Urban West Communities, supra,* 40 Cal.App.4th at pages 1168-1169), is to claim it is "incorrect" and to "disapprove[]" it. (Maj. opn., *ante,* at p. 896.) That decision is, however, well grounded in California surety law. (*Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 155 [308 P.2d 713] ["The obligation of the sureties on defendant's bonds . . . was an obligation to pay only if plaintiff established, *without reference to the bond,* a legal and valid claim for compensation." (Original italics.)]; *Bloom v. Bender, supra,* 48 Cal.2d at p. 803 ["it has been held that a surety is not liable where the principal does not incur any obligation under the basic contract"]; *Flickinger v. Swedlow Engineering Co., supra,* 45 Cal.2d at p. 394 ["any right which plaintiff might have had to recover upon the bond was necessarily dependent upon plaintiff's right to recover upon his contract with [the principal]"].) Despite this explicit language, the majority seeks to distinguish our cases on the basis that here the subcontractors' "mechanic's lien claim is 'a legal and valid claim for compensation.' " (Maj. opn., *ante,* at p. 895.) The mechanic's lien, however, is against the *property,* not the contractor. The subcontractors have no right to recover against the *principal* under either the contracts or the mechanic's liens. The bond did not create an obligation where none existed.

The majority cites several cases that it claims support its position. (Maj. opn., *ante,* at p. 893.) But in none did the court suggest the surety (or principal) had to pay absent some underlying obligation of the principal.

They certainly do not suggest the bond alone obligated the principal to pay what the underlying contract expressly said it did *not* have to pay. In *Southern Heaters Corp.* v. *N.Y. Cas. Co.* (1953) 120 Cal.App.2d 377 [260 P.2d 1048], for example, the issue was whether a bond naming as principal the fictitious business name of an individual also covered obligations incurred under another fictitious name of the same individual. In deciding the question, the court said that "When a bond is given for the purpose of complying with the mechanic's lien law [citation] the terms of the statute are to be read into the bond and control its interpretation and effect." (*Id.* at p. 379.) By no means does this language suggest the surety would be liable absent an underlying obligation of the principal under either name.

The majority also suggests the specific language of the bond itself creates an obligation separate from any underlying contract. It is true that the bond itself does not expressly incorporate all the relevant statutory provisions. But it may not be interpreted without regard to those provisions. The bond expressly states it is a payment bond, as defined in Civil Code section 3096, to comply with the laws of title 15, "Works of Improvement," of the Civil Code. "The rule is that rights and liabilities under a surety bond are to be determined from the language of the bond read in the light of applicable statutes." (*Morro Palisades Co.* v. *Hartford Accident & Indemnity Co.* (1959) 52 Cal.2d 397, 400 [340 P.2d 628]; see also *Southern Heaters Corp.* v. *N.Y. Cas. Co., supra,* 120 Cal.App.2d at p. 379 [quoted in the previous paragraph].) This bond is not fundamentally different from other bonds that merely guarantee payment of an underlying obligation.

No relevant statutory provision supports the subcontractors' claim. Under Civil Code section 3096, *"Once the principal is in default,* there is a direct right of action against the surety on statutory payment bonds . . . ." (1 Marsh, Cal. Mechanics' Lien Law (6th ed. 1996) § 11.4, p. 11-6, italics added.) However, nothing in that statute abrogates the basic necessity that there be an underlying obligation for which the principal is in default. The subcontractors also cite Civil Code section 3226.[4] The key words in that statute are "released from liability." One cannot be released from liability unless an underlying liability exists. This statute also does not omit the requirement that the principal be liable for some underlying obligation. The majority also cites Code of Civil Procedure section 996.410, subdivision (a),

---

[4]Civil Code section 3226 provides, "Any bond given pursuant to the provisions of this title will be construed most strongly against the surety and in favor of all persons for whose benefit such bond is given, and under no circumstances shall a surety be *released from liability* to those for whose benefit such bond has been given, by reason of any breach of contract between the owner and original contractor or on the part of any obligee named in such bond, but the sole conditions of recovery shall be that claimant is a person described in Section 3110, 3111, or 3112, and has not been paid the full amount of his claim." (Italics added.)

which allows the beneficiary to "enforce the *liability* on a bond against both the principal and sureties." (Italics added; see maj. opn., *ante*, at p. 894.) I agree that, *if there is liability*, the beneficiary could sue both the principal and the surety. But this statute, too, does not omit the requirement that there be liability.

The subcontractors have established no obligation of the part of the *principal*. They could have established such an obligation if the owner had paid the contractor and the contractor had failed to pay the subcontractors. Then they (or the owner, in order to free its property of mechanic's liens) could have sought recourse directly against the surety. But here the *owner* defaulted. The bond made Safeco a surety for the contractor's default. It did not make the contractor a surety for the owner's default. As the majority notes (maj. opn., *ante*, at p. 887), Keller obtained the bond at the owner's insistence under the general contract. The owner obtained protection in case it paid the contractor, but the contractor did not pay the subcontractors, and they placed liens against the property. In that event, the principal and, under the bond, the surety would be liable. The bond would protect the owner, and the subcontractors would be duly paid according to the terms of the subcontracts. The bond protects the owner from Keller's default; it does not protect the owner from its own default and certainly does not grant the subcontractors indirectly what they agreed they would not receive directly.

The majority not only changes basic surety law by making the bond a guarantee against a third party's default and not the principal's. Its conclusion that Keller must pay the subcontractors even if the owner does not pay it is contrary to the parties' express intent that Keller and the subcontractors share equally the risk of owner nonpayment. (See Civ. Code, § 3268 ["Except where it is otherwise declared, the provisions of the foregoing titles of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties . . . ."].) The majority's analysis is also illogical. The owner required Keller to obtain a bond to protect the owner from the risk that Keller would default. A bond naming Keller as principal should not, however, force Keller to pay for the owner's default. Yet that is the result the majority has decreed. It is nonsensical. Why would a contractor pay for a bond that assumed a risk the contractor had expressly *not* assumed? If the contractor did not pay the surety to cover the owner's default, why would the surety voluntarily assume that liability? The answer, implicit in Civil Code sections 2787 and 2809, is that neither did so. The contractor obtained a bond to answer for *its* obligation, not someone else's.

The surety has no liability independent of the contractor. Because the contractor has no liability, neither does the surety.

## III. CONCLUSION

The contract between the contractor and the subcontractors does not affect the mechanic's lien rights of either against the property except to establish the value of the lien. The parties validly could and did agree among themselves that each would assume equally the risk of owner default while preserving their mutual mechanic's lien remedies against the property. The payment bond answered for the contractor's obligations, not the owner's, and therefore neither the principal nor the surety is liable in the absence of the contractor's default. This conclusion is reasonable, straightforward, and consistent with the parties' intent, the law of mechanic's liens and surety, and the public policy in favor of enforcing freely negotiated contracts. The subcontractors entered into their agreements voluntarily. They should be bound by those agreements.

I would reverse the judgment of the Court of Appeal.

Mosk, J., and Baxter, J., concurred.

Appellants' petition for a rehearing was denied September 3, 1997. Mosk, J., Baxter, J., and Chin, J., were of the opinion that the petition should be granted.