Maupin, J.,
concurring and dissenting:
I agree with the majority that the single-subject requirement of NRS 295.009 is not constitutionally infirm. I also agree that the initiative petition here violates NRS 295.009 because it contains multiple provisions “functionally related and germane” to more than one subject. I disagree, however, with the majority’s remedy for this statutory violation. Thus, I have determined to join Justice Hardesty’s dissent with regard to the remedy afforded and agree with him that we should order the petition removed from the November ballot. I write separately to note my views concerning the scope of NRS 295.009 and how it was violated in this instance.
NRS 295.009, adopted last year by the Nevada Legislature, provides as follows:
1. Each petition for initiative or referendum must:
(a) Embrace but one subject and matters necessarily connected therewith and pertaining thereto; and
*918 (b) Set forth, in not more than 200 words, a description of the effect of the initiative or referendum if the initiative or referendum is approved by the voters. The description must appear on each signature page of the petition.
2. For the purposes of paragraph (a) of subsection 1, a petition for initiative or referendum embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.
When the text of a statute is plain and unambiguous, a court should impart it with ordinary meaning and not go beyond that meaning.[1] If a statute is ambiguous, meaning that it is susceptible to differing reasonable interpretations, “the statute should be construed consistently with what reason and public policy would indicate the Legislature intended.”[2] Going further, we must construe ambiguous statutes so as to avoid absurd results.[3] Having determined that NRS 295.009 is constitutional, we must construe it in accord with the stated principles of statutory interpretation.
In my view, this statute suffers from a degree of ambiguity in its basic application — the term “one subject” is inescapably susceptible of broad or narrow scope. Quite predictably then, neither the Secretary of State nor the district court engaged in any comprehensive attempt at determining the scope of the “single subject” rule. It is understandable that this has occurred because both could reasonably conclude that this court would be the final arbiter of the issue and because, in truth, it appears that the Legislature intended that the rule be generally stated. Thus, we are compelled to define the term by episodic inclusion and exclusion in a manner consistent with that intent.
The clear purpose of NRS 295.009 is to provide guidance and structure so that persons seeking to change the basic precepts of state governance may draft constitutional initiatives that are readily understandable and do not require the petition signators and voters to engage in “logrolling,” i.e., signing or voting for a multifaceted petition in order to effect at least one element of change. While the scope of the limitation as drafted by the Legislature is not a model of specificity, we should assess the People’s *919 Initiative to Stop the Taking of Our Land (PISTOL) with these principles in mind.
The authors of the PISTOL petition quite candidly admit that a primary impetus for their initiative is to prevent state and local governments in Nevada from using eminent domain powers to take private property for the purpose of ultimate transfer to other private parties for neighborhood redevelopment, as the United States Supreme Court sanctioned in Kelo v. New London.[4] In their descriptive of the petition as “Kelo plus,” they also admit that the petition involves at least two subjects. In fact, beyond the attempt to prevent Kelo-typt takings, they have included several additional measures encompassing other subject matters: to address real or perceived inequities in Nevada statutory and common law concerning eminent domain; to create a new and completely different cause of action for owners of real estate who sustain “substantial damages” from local or state government action such as “down zoning” or public construction; to create a new and completely different cause of action for owners of personal property who sustain “substantial damages” from local or state government action;[5] and to create special judicial procedures discrete to eminent domain actions. In this, the drafters of the multifaceted PISTOL petition have carefully added myriad additional features to ride the coattails of a very meaningful and salutary movement to restrict the powers of government to take private property for eventual transfer to other private interests. In short, the signatories to this petition were forced to vote for the other measures in order to achieve the protection they sought from the ruling in the Kelo case. And, conversely, it is quite arguable that the non-Kelo provisions were inserted because of a legitimate concern that they would fail on their own. This is exactly the type of logrolling that NRS 295.009 was meant to prevent.
All of the clearly separate subjects embraced within the PISTOL petition have dramatically differing ramifications and all require that the signators and prospective voters accept the entirety of the petition in order to obtain any of the proposed changes to the Nevada Constitution. Accordingly, this multifaceted petition runs afoul of the statutory command.
Unfortunately, when a petition violates the single-subject statute, enforcement of necessity requires some degree of nullification. Accordingly, while the signators here intended that the entire *920 petition be placed before the voters, that intent does not end the matter. Again, this statute places a constraint that the sponsors and signators must follow and we must enforce.
The petitioners argue that the PISTOL petition deals with one general subject, eminent domain. As stated, no member of this tribunal agrees on that score because any rule supporting such a broad interpretation would render meaningless the statute’s attempt to limit the scope of individual proposed amendments to the State Constitution. Again, the Kelo-portion of the petition separately embraces one subject because it alone defines government action that cannot qualify as eminent domain; and the remaining portions, Kelo plus, further embrace a number of additional separate subjects. None of the groupings identified above are ‘ ‘necessarily connected” to any of the others.
Interestingly, while the court is unanimous in its conclusion that PISTOL violates NRS 295.009, there is no solid consensus as to a remedy or a sanction for noncompliance — a component that is patently missing from the statute. No wonder the Secretary of State eschewed any real attempt at enforcing this measure. But the Legislature could not possibly have intended to pass a law with the contradictory intent that no enforcement by either the executive or judicial branches would be forthcoming. Thus, we must provide a remedy that best reflects the legislative purpose behind the single-subject rule — to provide clarity and certainty and to minimize so-called “Hobson’s choices” for signators and voters.
Four permutations are available: do nothing and leave the entire matter on the ballot as is; break the measure out into separate ballot measures by redrafting them into separate sections so that all of the elements remain on the ballot; strike secondary portions not essential to the primary thrust of the measure; or strike the petition in its entirety from the ballot.
The first alternative is clearly unavailable because it fails in any respect to remedy or sanction the violation. Again, it would be absurd to conclude that the Legislature went to the trouble of passing this statute without a remedy or sanction for violations of it. The second alternative, redrafting the measure into component parts and leaving all of them on the ballot, is equally problematic as a matter of general application. In this case, as well as in all future cases based upon the precedent set in this matter, we would have to divine groupings ourselves on a subjective basis, groupings which are not always susceptible of clear demarcation. Going further, the second alternative would reward the sponsors for forcing the signators to engage in logrolling to obtain protection from Kelo, and would encourage future sponsors to attach less attractive measures to more popular ones.
*921 The majority today elects the third approach. It has itself divined primary and secondary portions of the petition and stricken the secondary measures. But the application of a primary-secondary line of analysis ignores the petitioners’ admission at the oral argument of this appeal that the petition is “KELO PLUS.” Under this construct, they should strike everything from the ballot except section two, the actual Kelo petition. But, as Justice Hardesty has noted, even this construct contorts NRS 295.009. Thus, while complete removal of the matter from the ballot is the harshest of all the results, it is the most solid legally under Rogers v. Heller,[6]
Finally, as noted by Justice Hardesty:
The majority, by creating this remedy of severing and striking portions of an initiative, has set a dangerous precedent for the future review of initiative petitions. Nevada courts are now empowered to sever and strike provisions that violate the single-subject requirement, not because those provisions are unconstitutional or unenforceable, but simply because the court determines that the offending provisions fall outside the court’s conjecture of what single-subject the petition is [primarily] attempting to promote. . . . Such discretion, . . . allows the courts to employ pure “judicial surgery” in severing a petition, creates an unworkable test for future cases and gives the courts unfettered freedom to tamper with the people’s constitutional prerogative.
While striking the measure seems harsh in the short term, the remedy Justice Hardesty and I now suggest provides the most certainty for future initiative proponents in the long run. The majority ruling today mandates, without any definitive standard, biannual judicial interference in the initiative process. Our solution limits the use of judicial discretion such as applied here, which can never truly and accurately reflect the will of petition signators and, ultimately, the voters. In short, the majority holding today requires ad hoc decision making by judges concerning the subjective intent of initiative proponents.
It would be inviting to permit the electorate to vote on the Kelo portion of the petition and simply strike the rest. But that would not settle the overriding question here: what standard should we use to strike or not strike? While a ruling taking an expedient course seems fair today, it would set a trap for deciding the validity of future ballot initiatives under NRS 295.009. We should adopt a rule that gives absolute and clear guidance to proponents of measures such as PISTOL. The majority ruling today does *922 nothing of the kind, inevitably leading to unwarranted mystification of petition proponents and the electorate alike, particularly those interested and committed enough to attempt constitutional change.

 Banegas v. SIIS, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001).

 Id.

 See California Commercial v. Amedeo Vegas I, 119 Nev 143, 145, 67 P.3d 328, 330 (2003).

 545 U.S. 469 (2005). Interestingly, the petition itself does not mention Kelo. However, the proponents have publicly promoted the petition as dealing with that case and admit that it is the first impetus for this petition.

 This might include anything from automobiles to professional licenses.

 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001).