CALIFORNIA COMMERCIAL ENTERPRISES, dba COMMERCIAL ENTERPRISES, Appellant, v. AMEDEO VEGAS I, INC., a Delaware Corporation, Respondent.

No. 38042

April 29, 2003

67 P.3d 328

*Morse & Mowbray* and *Christopher H. Byrd* and *John H. Mowbray,* Las Vegas; *Hunt, Ortmann, Blasco, Palffy & Rossell* and *Laurence P. Lubka,* Pasadena, California, for Appellant.

*Hale Lane Peek Dennison and Howard* and *Shannon M. Bryant, Steven B. Lane,* and *Torry R. Somers,* Las Vegas; *Bryan Cave LLP* and *Christopher L. Dueringer* and *Sheldon Eisenberg,* Santa Monica, California, for Respondent.

Before AGOSTI, C. J., ROSE and GIBBONS, JJ.

## OPINION

*Per Curiam:*

In this appeal, we must determine if a mechanic's lien may be used to recover delay and disruption damages when a contract exists between the parties. California Commercial Enterprises (Commercial), a framing and drywall subcontractor, contracted with R.D. Olson to perform work for a development owned by Amedeo Vegas I, Inc. (Amedeo). After Commercial finished its work, which was allegedly delayed for sixteen months by Amedeo, it recorded a mechanic's lien under NRS 108.222 for $515,927.92. The lien reflected the amount remaining on the contract price, as well as alleged delay and disruption damages. Amedeo paid in full the remainder on the contract price, $194,912.00. Commercial then tried to foreclose on the full lien for $515,927.92. Amedeo moved the district court for an order to show cause to expunge the lien or reduce the amount to zero. The district court entered an order to expunge the lien or, in the alternative, to reduce the lien amount to zero because it decided the contract price had been paid and the remaining amount was not properly the subject of a mechanic's lien. Commercial brought this timely appeal under NRS 108.2275(6). The issue on appeal is whether a lien is an available remedy for unpaid extra work costs under NRS 108.222(1) when a contract exists.[1]

Commercial argues that NRS 108.222(1) permits a lien for the value of labor and materials, plus reasonable overhead and profit, used to benefit the owner's property. It asserts that limiting recovery to the contract price is contrary to the language and intent of the statute. Commercial also contends that the purpose of the statute is to allow improved property to be the security for the costs of the improvement where materials and labor supplied by the contractor or subcontractor contribute to the improved property's value, so that the owner is not unjustly enriched.

Amedeo counters that the language of NRS 108.222 unambiguously limits the lien amount to the contract price and that legislative intent supports this reading. Amedeo argues that the legislature knew that a subcontractor could incur costs above the contract

---

[1]The contract is not part of the record and only one of the change orders is included.

price when it enacted NRS 108.222 but chose not to include language to address that possibility in the statute.

First, we note that Commercial was requested to do extra work under written, approved change orders. While the scope of the work under these change orders increased six-fold from the original contract, the approved change orders became part of the contract. From the record, it appears that Commercial was fully compensated under the original contract price plus the approved change orders. Commercial then submitted a claim for $321,016.00 to R.D. Olson for alleged "delay-related" damages. It appears from the record that these delay-related costs were within the scope of the contract in the form of approved change orders.

To the extent that these alleged damages were incurred outside of the contract, we now address Commercial's arguments.

NRS 108.222(1) provides:

> 1. Except as otherwise provided in subsection 2, a person who performs labor upon or furnishes material of the value of $500 or more, to be used in the construction, alteration or repair of any building, or other superstructure, railway, tramway, toll road, canal, water ditch, flume, aqueduct or reservoir, bridge, fence or any other structure, has a lien upon the premises and any building, structure and improvement thereon for:
> (a) If the parties entered into a contract, the unpaid balance of the price agreed upon for; or
> (b) In absence of a contract, an amount equal to the fair market value of,
> the labor performed or material furnished or rented, as the case may be, by each respectively, including a reasonable allowance for overhead and a profit, whether performed or furnished at the instance of the owner of the building or other improvement, or at the instance of his agent.

"The construction of a statute is a question of law subject to de novo review."[2] When a statute is not ambiguous, this court has consistently held that we are not empowered to construe the statute beyond its plain meaning, unless the law as stated would yield an absurd result.[3] The language of NRS 108.222(1)(a) is not ambiguous. It clearly states that, if a contract exists, the amount of the lien that

[2]*County of Clark v. Upchurch,* 114 Nev. 749, 753, 961 P.2d 754, 757 (1998).

[3]*Diamond v. Swick,* 117 Nev. 671, 675, 28 P.3d 1087, 1089 (2001).

a contractor or subcontractor has upon the property and improvements is "the unpaid balance of the price agreed upon." Because this language is not ambiguous, we must construe that language according to its ordinary meaning.[4]

Reading NRS 108.222 in conjunction with NRS 108.235(1) and NRS 108.239(5) further supports the conclusion that a lienholder is limited to the contract price when a contract exists. NRS 108.235(1) states, in pertinent part, that a "contractor shall be entitled to recover, upon a lien recorded by him, only such amount as may be due to him according to the terms of his contract." NRS 108.239(5) provides in pertinent part that "[n]o consequential damages may be recovered in an action pursuant to this section."[5] The statutory scheme as a whole clearly limits a lienholder to the amount of the contract if a contract exists.

Furthermore, the purpose of the mechanic's lien statute is to provide a speedy remedy to secure " 'payment of the claims of builders, mechanics and materialmen out of the property to which their work and material have contributed an increased value.' "[6] The speedy nature of the remedy would be frustrated if the court were required to hear evidence regarding the disputed costs of materials, labor, overhead and profit beyond the contract price.[7]

Commercial next argues that Nevada case law supports the position that a contractor can impose a lien for extra costs incurred as a result of the owner's alleged delays. Commercial cites our 1934 opinion in *Paterson v. Condos*[8] for the proposition that, when the terms of a contract have been substantially changed by the property owner, a lien is permissible for the extra costs naturally arising out of the changed terms. Commercial also cites our more recent opinion in *Udevco, Inc. v. Wagner*[9] for the proposition that the contract price does not bar a lien claim for extra work that,

---

[4]*Banegas v. SIIS,* 117 Nev. 222, 225, 19 P.3d 245, 247 (2001).

[5]Commercial tries to characterize its delay costs as direct damages, rather than consequential damages, to avoid this statute. However, delay costs are a foreseeable consequence of construction delays, and are therefore properly characterized as consequential damages. *See Clark County Sch. Dist. v. Rolling Plains,* 117 Nev. 101, 106, 16 P.3d 1079, 1082-83 (2001).

[6]*Brunzell v. Lawyers Title,* 101 Nev. 395, 396-97, 705 P.2d 642, 644 (1985) (quoting *Williams Bros. Const. v. Vaughn,* 631 P.2d 688, 690 (Mont. 1981)).

[7]*See* NRS 108.239(5) (requiring the district court to hear and determine mechanic's lien claims in a summary way).

[8]55 Nev. 134, 28 P.2d 499 (1934).

[9]100 Nev. 185, 678 P.2d 679 (1984).

here, the significant increase in the scope of the work, like the circumstances in *Paterson* and *Udevco,* was a material change in the terms of the contract allowing Commercial to assert a lien claim for its increased costs.

Both *Paterson* and *Udevco* are distinguishable from the case at hand. *Paterson* involved an action in quantum meruit to foreclose a mechanic's lien filed by materialmen and subcontractors. The lien claimants had entered into an express contract with the defendant to construct a building for $38,800.00 according to plans and specifications, but significant changes were made to the plans, costing thousands of dollars more than the contract price.[10] This court held that the lien claimants could recover in quantum meruit in that situation because the changes had been so great that it appeared the original contract had been abandoned.[11]

In *Udevco,* two subcontractors filed separate lien claims against a developer and others, arguing that the contract provision, requiring a written change order for extra-contractual work with the first subcontractor, had been waived because the subcontractor had performed extra work upon the contractor's oral request.[12] This court held that the written change order provision had been waived because the developer orally requested the extra work and promised to compensate the subcontractors for it, and the subcontractors relied on that promise.[13] Moreover, we stated that the subcontractor "performed—*after* completing framing according to plans and specifications—extra work of such character and magnitude that the idea that the parties intended him to do so without additional compensation would be highly unreasonable."[14]

In both of the above cases, the contract was waived or abandoned in whole or in part. Therefore, rather than relying on the contract price, we allowed recovery based upon quantum meruit, a means of recovery that is similar to NRS 108.222(1)(b).

Here, in contrast, there is no evidence that the parties waived or abandoned any portion of the contract. Pursuant to written, approved change orders, which became part of the contract price, Commercial performed extra work. Commercial was compensated under the contract and for approved change orders. However, Commercial then submitted a claim for "delay-related" damages,

---

[10] 55 Nev. at 140, 28 P.2d at 499.

[11] *Id.* at 142-43, 28 P.2d at 500.

[12] 100 Nev. at 186-87, 678 P.2d at 680.

[13] *Id.* at 189-90, 678 P.2d at 682.

[14] *Id.* at 190, 678 P.2d at 682.

which allegedly included materials, labor and extra overhead incurred as a result of the delays. The extra materials, labor and delay-related compensation that Commercial now seeks should have been addressed by Commercial when the parties were bargaining over the amounts of the change orders. Once those change orders were approved, they became part of the contract price. Neither *Paterson* nor *Udevco* applies because the contract provisions were not waived or abandoned.[15]

Because it does not appear that Commercial suffered damages beyond the contract price and approved change orders, and because, to the extent that it did, the statutory scheme does not allow a mechanic's lien when a contract exists and its provisions have not been waived, we affirm the order of the district court.

---

[15]Commercial's argument that, by failing to allow a mechanic's lien claim for delay-related damages, the district court would permit Amedeo to be unjustly enriched is without merit. It appears that Commercial was compensated under the contract, so Amedeo was not unjustly enriched. Furthermore, NRS 108.222 allows a contractor to seek a mechanic's lien for labor, materials, overhead and profit when no contract exists, thereby preventing unjust enrichment. Presumably, when a contract exists, the parties have already bargained over these items.