*1105
 
 OPINION
 

 By the Court,
 

 Gibbons, C. J.:
 

 We previously issued an opinion in these matters on June 12, 2008. In that opinion, we reversed the judgment on the breach of contract claim regarding the retrofit issue and remanded for a new trial, affirmed the district court’s judgment enforcing the lien, vacated the district court’s award of attorney fees, and reversed the award of sanctions. Appellants’ and respondents’ petitions for rehearing followed.
 

 We will consider rehearing when we have overlooked or misapprehended material facts or questions of law or when we have overlooked, misapplied, or failed to consider legal authority directly controlling a dispositive issue in the appeal.
 
 [2]
 
 Having considered the petitions and answers thereto in light of this standard, we conclude that rehearing is not warranted, and therefore, we deny the petitions for rehearing. Nevertheless, as petitioners have pointed out, a portion of our June 12, 2008, opinion could be misconstrued as being contrary to this court’s precedent. Accordingly, although we deny rehearing, we withdraw our June 12, 2008, opinion and issue this opinion in its place.
 

 In this opinion, we reach the same conclusions as in our prior opinion, but we clarify our reasoning for reversing the district court’s judgment on the breach of contract claim regarding the retrofit issue and for remanding that matter to the district court for a new trial.
 

 In the district court, respondent Bullock Insulation, Inc. (Bullock Insulation), filed complaints against appellants Lehrer McGovern Bovis, Inc. (Bovis), and Venetian Casino Resort, LLC (Venetian Resort),
 
 [3]
 
 for, among other claims, breach of contract and to foreclose on a mechanic’s lien. The parties disputed, among other things, whether, by the terms of the subcontract between Bullock Insulation and Bovis, Bovis was required to pay Bullock Insulation to retrofit walls with fire retardant materials. After considering the jury’s answers to special interrogatories and its general verdict, the district court entered judgment in favor of Bullock Insulation. The district court later entered an order granting Bullock Insulation’s motion for attorney fees and sanctioning Bovis for bad-faith litigation practices. These appeals followed.
 

 In these appeals, we consider the primary issue of whether a new trial is required when the district court creates special interrogatories upon issues of fact and the jury’s answers to those in
 
 *1106
 
 terrogatories are inconsistent, such that an ultimate judgment cannot be entered without contradicting a portion of the answers and the general verdict. While this court has held that parties have a duty to object to inconsistent jury verdicts before the jury is discharged, we conclude that this general rule is not absolute because, under NRCP 49(b), the district court is obligated not to enter a judgment when the answers to interrogatories are inconsistent with each other and one or more answers are also inconsistent with the general verdict. In this case, we conclude that a new trial is warranted regarding the breach of contract claim related to the retrofit issue, even though the parties failed to object to the verdicts as inconsistent prior to discharge of the jury, because the ultimate judgment cannot be reconciled by an interpretation of the special verdicts and the general verdict in their totality. Therefore, because NRCP 49(b) mandates that a judgment shall not be entered when such inconsistencies exist, we conclude that the district court abused its discretion when it entered the inconsistent judgment.
 

 We also consider the enforceability of a mechanic’s lien waiver provision entered into before the Legislature amended NRS Chapter 108 to require specific forms for lien waivers, and whether a pay-if-paid provision entered into before the Legislature amended NRS Chapter 624 to include provisions for prompt payment is unenforceable as a matter of public policy. Additionally, we consider whether the district court abused its discretion when it sanctioned Bovis for maintaining its defense in bad faith.
 

 We conclude that the district court properly determined that the lien waiver and pay-if-paid provisions were unenforceable based upon Nevada’s public policy favoring the statutory right to a mechanic’s lien. Additionally, the district court abused its discretion when it sanctioned Bovis for bad-faith litigation practices.
 

 Accordingly, we reverse the judgment on the jury verdict as it concerns the breach of contract claims related to the retrofit issue, based on the inconsistent answers to the special interrogatories, and remand this matter to the district court for further proceedings consistent with this opinion. We affirm the remaining portion of the district court’s judgment regarding the lien waiver provision, the pay-if-paid provision, and the principal owed, plus interest. Finally, in light of our decision that a new trial is warranted on the breach of contract claim concerning the retrofit work, we necessarily vacate the portion of the district court’s order awarding attorney fees and reverse the portion of its order awarding sanctions.
 

 
 *1107
 

 FACTS AND PROCEDURAL HISTORY
 

 Las Vegas Sands, Inc., the predecessor of Venetian Resort, entered into a Construction Management Agreement (the agreement) with Bovis under which Bovis agreed to manage remaining construction of the Venetian Casino Resort and Hotel (the project). Under the agreement, Bovis was obligated to hire subcontractors and provide the work, labor, services, materials, supplies, and equipment necessary to complete the project.
 

 Bovis later subcontracted with Bullock Insulation for firestopping work on the project. Firestopping involves installing fire retardant material around openings in walls to prevent smoke and fire from spreading between rooms. Under the subcontract, Bullock Insulation was to install “firestop putty pads” around certain of the project’s electrical boxes, but the parties dispute whether, by the terms of the subcontract, Bullock Insulation was required to install the putty pads around the electrical boxes in the rooms’ separation walls.
 

 The subcontract incorporated the general conditions of the agreement, which contained a lien waiver clause, whereby Bullock Insulation promised “not [to] suffer or permit any lien or other encumbrance to be filed” against the project. The lien waiver clause is located in the agreement after other provisions discussing final payment terms and the conditions precedent for final payment. The lien waiver is not dependent upon Bullock Insulation’s receipt of any payment for labor or materials. Also preceding the lien waiver provision of the agreement is a pay-if-paid provision, under which, by way of incorporation into the subcontract, Bullock Insulation’s right to payment for its work was contingent upon Venetian Resort’s payments to Bovis.
 

 While the subcontract explicitly required Bullock Insulation “to provide firestop protection of electrical boxes where such boxes are required to have a minimum clear distance in rated walls/partitions,” and the original contract documents described the guest room walls as rated, trial testimony nevertheless supported Bullock Insulation’s contention that it believed that the walls were not rated. Testimony also revealed that Bovis had instructed Bullock Insulation to insulate according to room mockups, which are constructed rooms that serve as examples for the builders. While the mockups did not contain firestop putty pads on the electrical boxes in the rooms’ separation walls, a Bovis official testified that he had never directed Bullock Insulation to omit the putty pads based on the mockups’ omission of them.
 

 The subcontract required Bullock Insulation to obtain written approval from Bovis before deviating from any of its provisions, and
 
 *1108
 
 Bullock Insulation presented no evidence of any written approval or change order eliminating putty pad requirements. The subcontract further provided that Bullock Insulation would bear the cost for any corrective work resulting from unapproved deviations from its terms.
 

 After much of the work on the project was completed, the Clark County Building Department issued a correction notice, which stated that firestop putty pads were required around the electrical boxes in the rooms’ separation walls. Although Bullock Insulation provided Bovis with confirmation that it had installed the putty pads in accordance with the subcontract, Bovis’s subsequent inspection revealed that putty pads had not been installed in most of the rooms’ separation walls with the exception of certain walls on the project’s fifth and sixth floors.
 

 In its attempt to resolve the putty pad situation, Bovis sent a letter to Venetian Resort, acknowledging that Bullock Insulation may have believed that the Clark County Building Department did not require the putty pads in the rooms’ separation walls above the 19th floor and explaining that Bullock Insulation’s failure to install putty pads in those walls was likely a good-faith mistake. Nonetheless, Bovis directed Bullock Insulation to retrofit all of the guest room walls by installing the omitted putty pads according to Clark County Building Department requirements. Retrofitting the walls required a substantial amount of work, as most of the rooms had already been completed.
 

 After the retrofit work was completed, Bullock Insulation recorded a mechanic’s lien on the project for $1,636,170.57 and, thereafter, filed a district court complaint against Venetian Resort and Bovis for breach of contract, foreclosure of the mechanic’s lien, and other claims. Bovis counterclaimed for, among other claims, breach of contract. At trial, Bovis and Bullock Insulation made oral stipulations, excluding the putty pad issue, regarding the value and amount owed for, among other things, certain approved change orders, pending change orders, and back charges. The district court entered an order in the April 22, 2005, minutes pursuant to the stipulations. Later, the parties disputed which items were included in the stipulations, and the district court advised them to memorialize their stipulations in writing, which they failed to do.
 

 The remaining issues for trial revolved around the firestop putty pad requirements as set forth in the subcontract and who was responsible for the retrofit. Bullock Insulation and Bovis stipulated that Bullock Insulation incurred labor costs of $326,905 associated with the retrofit, and Bovis incurred $788,170 in damages for the retrofit work.
 

 At the conclusion of the trial, the district court rejected Bovis’s proposed interrogatories and drafted its own, to which no party ob
 
 *1109
 
 jected until after the jury was dismissed. The first interrogatory asked, “[djoes the original [subcontract require Bullock [Insulation] to install fire putty pads on electric boxes in the . . . guest [rooms’] separation walls in the hotel tower?” The jury responded in the affirmative. The second interrogatory asked, “[d]id Bovis modify or waive installation of fire putty pads in the guest room separation walls while said walls were being constructed?” The jury responded in the negative. The third interrogatory asked, “[sjhould Bullock [Insulation] be entitled to compensation over and above its original [sub] contract for its labor in doing the fire putty pad retrofit after the walls had been constructed?” The jury responded in the affirmative. The fourth interrogatory asked, “[sjhould Bovis be entitled to back charge (collect from) Bullock [Insulation] its additional costs to retrofit the guest room wall electrical boxes with the internal fire putty pads?” The jury answered in the negative.
 

 Thus, although the jury found that the subcontract required Bullock Insulation to install the putty pads around the electrical boxes in the rooms’ separation walls, it nevertheless found that the subcontract required Bovis to pay Bullock Insulation extra compensation for the retrofit installation. The jury’s general verdict awarded Bullock Insulation $326,905, the amount to which Bovis and Bullock Insulation had stipulated as Bullock Insulation’s costs for the retrofit work, and denied Bovis recovery for its costs in connection with the retrofit. Neither Bovis nor Venetian objected to the jury verdict before the jury was discharged.
 

 Although Bovis asserted that the pay-if-paid provision precluded Bullock Insulation from recording a valid lien, the district court concluded that the pay-if-paid provision was unenforceable as a matter of public policy because “[i]t deprives people who work on construction projects of a statutory right’ ’ to a mechanic’s lien.
 
 [4]
 
 Based on the jury’s answers to the special interrogatories and its general verdict, the district court entered judgment awarding Bullock Insulation $326,905, plus pre-judgment interest, for the costs related to the retrofit. Applying the orally stipulated value of the remainder of Bullock Insulation’s claims, along with Bovis’s orally stipulated offsets, the district court concluded that, excluding any amounts related to the retrofit, Bovis owed Bullock Insulation $980,488 under the subcontract, plus pre-judgment interest and additional per diem interest. Following a hearing on Bullock Insulation’s request to enforce the lien, the district court struck down the lien waiver provision in the subcontract, concluding that public policy, as codified in NRS Chapter 108, prohibited lien waiver clauses.
 

 
 *1110
 
 Bovis and Venetian moved for a new trial, arguing that inconsistencies in the special interrogatory answers and general verdict, together with irregularities in the proceedings, and the jury’s manifest disregard of the instructions warranted a new trial. However, neither Bovis nor Venetian objected to the judgment’s principal amount of $980,488. Concluding that the jury’s answers to the special interrogatories and its general verdict were not inconsistent because they “could easily be reconciled with each other and with the evidence at trial,” the district court denied the motion for a new trial.
 

 On Bullock Insulation’s motion, the district court entered orders awarding Bullock Insulation costs, pursuant to NRS Chapter 18, and attorney fees, based on Bovis’s rejection of Bullock Insulation’s offer of judgment in the amount of $1,100,000. The district court awarded Bullock Insulation additional attorney fees of $250,000, concluding that Bovis had defended the action in bad faith. Venetian and Bovis now appeal the district court judgment and the order denying their motion for a new trial. Bovis additionally appeals from the orders awarding Bullock Insulation costs, attorney fees, and sanctions. Bovis also appeals from the district court’s order against Bovis awarding costs to respondent Insurance Company of the West.
 
 [5]
 

 DISCUSSION
 

 Inconsistent jury verdicts
 

 Venetian and Bovis argue that the district court abused its discretion by entering a judgment based on the inconsistencies among the jury’s answers to the special interrogatories and its general verdict. In response, Bullock asserts that Venetian and Bovis waived any objection to any inconsistency in the jury’s verdicts when they failed to object before the jury was dismissed.
 

 The district court’s decisions concerning special interrogatories and verdicts are reviewed for abuse of discretion.
 
 [6]
 
 The district court’s decision to grant or deny a motion for a new trial is reviewed for abuse of discretion.
 
 [7]
 

 
 *1111
 
 This court has previously held that the parties have a duty to object to inconsistent jury verdicts before the jury is discharged.
 
 [8]
 
 The case of
 
 Eberhard Manufacturing Co. v. Baldwin
 
 concerned strict products liability and negligence claims related to a six-year-old boy’s injuries caused by contact with an open high-voltage electrical fuse box.
 
 [9]
 
 The jury returned verdicts against the owner of the fuse box for negligence and against the designer and manufacturer of the box’s locking mechanism for strict products liability.
 
 [10]
 
 However, the jury also returned a favorable verdict for one of the manufacturer’s distributors on the products liability claim.
 
 [11]
 
 While the plaintiffs moved for judgment notwithstanding the verdict, and the manufacturer moved for a new trial, none of the parties objected to the verdicts before the district court discharged the jury.
 
 [12]
 
 In holding that the parties had waived the right to argue inconsistent verdicts because they failed to object before the jury had been discharged, this court emphasized its “primary objective of the promotion and efficient administration of justice.”
 
 [13]
 
 This objective is best served by resolving inconsistencies before the jury is dismissed, thus avoiding the need for a new trial.
 

 While the principal objective set forth in
 
 Eberhard
 
 remains an important consideration in evaluating error based on inconsistent jury verdicts, we conclude that the rule in
 
 Eberhard,
 
 that an inconsistent verdict argument is waived if not raised before the jury is discharged, is not absolute. The
 
 Eberhard
 
 court based its holding exclusively on caselaw, primarily from other jurisdictions, without discussing the application of NRCP 49(b),
 
 [14]
 
 which is binding upon district courts in this state.
 
 [15]
 
 We interpret the mandatory language of NRCP 49(b) to require the district court not to direct the entry of judgment when the interrogatory answers are inconsistent with each other and one or more is also inconsistent with the general verdict.
 

 NRCP 49(b) provides that the court may submit interrogatories upon issues of fact, as well as forms for a general verdict. The
 
 *1112
 
 Seventh Amendment to the United States Constitution “requires a court to adopt that view of a case under which a jury’s special verdicts may be seen as consistent.”
 
 [16]
 
 However,
 

 [wjhen the [interrogatory] answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court
 
 shall not
 
 direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial.
 
 [17]
 

 Interpreting FRCP 49(b), which is almost identical to NRCP 49(b),
 
 [18]
 
 federal circuit courts of appeal have observed that, in circumstances where a party failed to object to inconsistencies in the verdicts, ‘ ‘where the inconsistency in the special interrogatories is so obvious[,] ... it would be proper to hold that the trial judge had an independent responsibility to act despite trial counsel’s silence.”
 
 [19]
 
 Thus, while the court should give weight to the party’s failure to object to such an inconsistency because courts must consider the Seventh Amendment right to a jury trial, if the answers and the verdict “are logically incompatible,”
 
 [20]
 
 “the terms of Rule 49(b) make it the ‘responsibility of a trial judge to resolve the inconsistency’ even when no objection is made.’ ’
 
 [21]
 

 In this case, when the jury answered the first two special interrogatories, it concluded that the subcontract required Bullock Insulation to install the firestop putty pads in the rooms’ separation walls and that Bovis had never waived this requirement. But, in response to the last two special interrogatories, the jury concluded that Bullock Insulation was entitled to additional compensation for installing the putty pads in the rooms’ separation walls as a retrofit and Bovis could not recover expenses related to Bullock Insu
 
 *1113
 
 lation’s failure to install the putty pads originally. Thus, the jury concluded that while the subcontract had required Bullock Insulation to install the putty pads, Bovis must pay Bullock Insulation extra compensation to complete the installation as set forth in the subcontract. However, when Bovis and Venetian moved for a new trial, the district court determined that the answers to these special interrogatories were not inconsistent with each other or with the general verdict. We disagree and conclude that the district court’s judgment on the general verdict is irreconcilable with two of the four answers to the special interrogatories. Thus, the special interrogatory answers resulted in an inconsistent judgment on the general verdict, which is contrary to NRCP 49(b)’s mandate that the district court shall not direct the entry of judgment when the interrogatory answers are inconsistent with each other and inconsistent with the general verdict.
 

 We conclude that
 
 Eberhard
 
 is distinguishable from this case. Although
 
 Eberhard
 
 required a pre-discharge objection to preserve the verdict inconsistency argument for a later challenge,
 
 Eberhard
 
 neglected to consider NRCP 49(b). Unlike in
 
 Eberhard,
 
 the district court in this case could not construct a judgment on the jury’s general verdict without contradicting two of the answers to the special interrogatories. Accordingly, in light of NRCP 49(b)’s mandate, we conclude that the district court abused its discretion when it authorized four interrogatories that resulted in an inconsistent jury verdict, entered judgment on the inconsistent verdict, and denied Bovis’s and Venetian’s motion for a new trial on the breach of contract claim concerning the retrofit issue.
 

 Our decision here is in accord with this court’s precedent. Although this court’s earlier decisions have explained that parties must object to jury verdicts before the jury is dismissed, those decisions were decided on distinguishable facts.
 

 In particular,
 
 Lee
 
 v. McCleod
 
 [22]
 
 and
 
 Priest v.
 
 Cafferata
 
 [23]
 
 are distinguishable because they involve juror misconduct, not inconsistent answers to interrogatories, and they therefore do not contain analyses of NRCP 49(b), which was dispositive in this case. Likewise,
 
 Scott
 
 v. Chapman
 
 [24]
 
 is distinguishable because, although the
 
 Scott
 
 court considered NRCP 49(b), the answers to the special interrogatories were not inconsistent with one or more answers and with the general verdict, as was the case here. In
 
 Scott,
 
 the jury returned a general verdict for the defendant, but it failed to answer the special interrogatories.
 
 [25]
 
 Thus, unlike in this case, the district court in
 
 Scott
 
 could construct a judgment without contradicting
 
 *1114
 
 the jury’s general verdict or any of its answers to the special interrogatories.
 

 Similarly,
 
 Brascia v.
 
 Johnson
 
 [26]
 
 is distinguishable from this case because the inconsistencies in
 
 Brascia
 
 were reconcilable. In
 
 Brascia,
 
 the jury returned a general verdict for the plaintiff and a general verdict for the defendant and answered a special interrogatory finding both parties 50 percent at fault in a negligence case.
 
 [27]
 
 The district court questioned the jury, which confirmed that it intended to find each party negligent and equally responsible for the accident.
 
 [28]
 
 Thus, although the reasoning in
 
 Brascia
 
 did not address NRCP 49(b), by questioning the jury’s intentions, the district court ostensibly fulfilled NRCP 49(b)’s requirements by “return[ing] the jury for further consideration of its answers and verdict.’ ’
 

 Cramer v.
 
 Peavy
 
 [29]
 
 is distinguishable because there was no inconsistent verdict at issue. Rather, Cramer argued that the jury’s defense verdict was impossible as a matter of law.
 
 [30]
 
 Cramer’s attorney told the jury throughout the trial not to award Cramer damages if it did not believe him.
 
 [31]
 
 Despite defense counsel conceding in closing argument that Cramer was entitled to $20,000 in damages, the jury found for the defendant and awarded Cramer no damages.
 
 [32]
 
 Cramer failed to object to the verdict before the jury was dismissed, and this court declined to address the issue on appeal.
 
 [33]
 
 Because Cramer does not involve inconsistent jury verdicts, it is inapplicable in this case.
 

 Finally, our holding in these matters is consistent with our decision in
 
 Carlson v.
 
 Locatelli,
 
 [34]
 
 In
 
 Carlson,
 
 this court concluded that, “where a jury returns an inconsistent verdict, it is ‘incumbent’ upon the trial court to attempt to clarify the verdict.”
 
 [35]
 
 This court explained that, rather than granting a new trial, the district court should have “ma[d]e a more concerted effort to save the jury’s verdict prior to dismissing the jury.”
 
 [36]
 
 This court was able to save the jury verdict by making a simple calculation to correct any
 
 *1115
 
 error in the determination of the plaintiffs net recovery. Therefore, this court reversed the district court’s order granting a new trial.
 
 [37]
 
 Our decision in
 
 Carlson,
 
 therefore, is in accord with our decision here. The difference in the outcomes is attributable to the type of inconsistencies addressed in each case. In
 
 Carlson,
 
 the verdicts were reconcilable by making a simple calculation. Here, on the other hand, the general verdict was irreconcilable with the interrogatory answers. Thus, NRCP 49(b) required a new trial.
 

 On remand, only the breach of contract claim regarding the retrofit is at issue, as that was the issue regarding which the jury interrogatory answers and general verdict were irreconcilably inconsistent.
 

 The agreement’s lien waiver provision
 

 Venetian argues that the district court erred when it concluded that the agreement’s lien waiver clause was unenforceable based upon public policy considerations as codified in NRS Chapter 108, Nevada’s mechanic’s lien laws.
 

 When the facts in a case are not in dispute, contract interpretation is a question of law, which this court reviews de novo.
 
 [38]
 
 A contractor has a statutory right to a mechanic’s lien for the unpaid balance of the price agreed upon for labor, materials, and equipment furnished.
 
 [39]
 
 “The object of the lien statutes is to secure payment to those who perform labor or furnish material to improve the property of the owner.’ ’
 
 [40]
 
 This court has held on numerous occasions “that the mechanic’s lien statutes are remedial in character and should be liberally construed.”
 
 [41]
 

 
 *1116
 
 Similar to this court, the California Supreme Court also liberally construes mechanic’s lien laws, considering them to be remedial in nature.
 
 [42]
 
 Accordingly, the California court has concluded that “ ‘[public] policy strongly supports the preservation of laws which give the laborer and materialman security for their claims.’ ”
 
 [43]
 
 Underlying the policy in favor of preserving laws that provide contractors secured payment for their work and materials is the notion that contractors are generally in a vulnerable position because they extend large blocks of credit; invest significant time, labor, and materials into a project; and have any number of workers vitally depend upon them for eventual payment.
 
 [44]
 
 We determine that this reasoning is persuasive as it accords with Nevada’s policy favoring contractors’ rights to secured payment for labor, materials, and equipment furnished.
 

 In
 
 Dayside Inc. v. District
 
 Court, this court addressed whether contractors may waive their statutory rights to a mechanic’s lien.
 
 [45]
 
 In that opinion, this court held that “[a]bsent a prohibitive legislative proclamation, a waiver of mechanic’s lien rights is not contrary to public policy’ ’
 
 [46]
 
 and will be enforced if it is clear and unambiguous.
 
 [47]
 
 Because Nevada’s public policy favors contractors’ rights to secure payment, and because
 
 Dayside
 
 removes public policy from the analysis of the enforceability of particular lien waiver provisions, we now overrule
 
 Dayside
 
 and conclude that it is appropriate for the district court to engage in a public policy analysis particular to each lien waiver provision that the court is asked to enforce. In doing so, we emphasize that not every lien waiver provision violates public policy. The enforceability of each lien waiver clause must be resolved on a case-by-case basis by considering whether the form of the lien waiver clause violates Nevada’s public policy to secure payment for contractors.
 

 In this case, the lien waiver provision applies regardless of whether Bullock Insulation received any payment. We conclude that such a provision violates public policy, as it fails to secure pay
 
 *1117
 
 ment for Bullock Insulation.
 
 [48]
 
 Accordingly, the district court properly concluded that the lien waiver provision was unenforceable.
 
 [49]
 

 Pay-if-paid provision
 

 Bovis argues that the district court erred when it determined that the pay-if-paid provision of the subcontract was unenforceable based upon public policy concerns with regard to the statutory right to a mechanic’s lien.
 

 At the time the parties entered into the agreement and subcontract, the Legislature had not yet proclaimed pay-if-paid provisions unenforceable,
 
 [50]
 
 and this court had not previously addressed the enforceability of such provisions. Because a pay-if-paid provision limits a subcontractor’s ability to be paid for work already performed, such a provision impairs the subcontractor’s statutory right to place a mechanic’s lien on the construction project.
 
 [51]
 
 As noted above, Nevada’s public policy favors securing payment for labor and material contractors.
 
 [52]
 
 Therefore, we conclude that pay-if-paid
 
 *1118
 
 provisions are unenforceable because they violate public policy. Accordingly, we affirm the portion of the district court’s judgment concluding that the pay-if-paid provision of the subcontract was unenforceable.
 

 The judgment
 

 Venetian argues that the district court abused its discretion when it entered judgment in the principal amount of $980,488 because it improperly included pending change order amounts and consequential damages, to which Venetian did not stipulate.
 

 This court has recognized that “ [stipulations are of an inestimable value in the administration of justice, and valid stipulations are controlling and conclusive and both trial and appellate courts are bound to enforce them.”
 
 [53]
 
 To be valid, a stipulation requires mutual assent to its terms and either a signed writing by the party against whom the stipulation is offered or an entry into the court minutes in the form of an order.
 
 [54]
 
 “[I]n construing a stipulation, a reviewing court may look to the language of the agreement along with the surrounding circumstances.’ ’
 
 [55]
 

 Under NRS 108.222(l)(a), mechanics have a lien right to “the unpaid balance of the price agreed upon,” but, under NRS 108.239(5), contractors may not recover consequential damages in an action to enforce a mechanic’s lien.
 
 [56]
 
 This court has concluded that approved change orders, which may be included within the scope of work that would otherwise be considered consequential damages, become part of the contract because the parties mutually agree to that work through the approval process.
 
 [57]
 

 As the district court minutes from April 22, 2005, reveal that the district court entered an order in the minutes pursuant to the stipulations, we conclude that the stipulations were valid. Additionally, we conclude that the surrounding circumstances reveal that the parties acquiesced to the stipulations. We conclude that during
 
 *1119
 
 the trial, the parties assented to the terms of the stipulations because they did not object to the district court’s decision to limit the presentation of evidence based on the fact that such evidence was unnecessary in light of the stipulations. After trial, the parties did not object to the nonretrofit principal judgment amount of $980,488, which was based on the stipulations, and appeared in the proposed and final judgments, as well as in Bovis and Venetian’s motion for a new trial. Therefore, we conclude that the stipulations were valid, the parties acquiesced to the principal judgment amount of $980,488, and they waived any objection to it by not raising objections to the judgment.
 
 [58]
 
 The nonretrofit principal judgment is thus not proper for consideration at the new trial on the retrofit issue. If either party obtains judgment against the other at the new trial, the parties are to handle this separately from the nonretrofit judgment, rather than using offsets against the existing nonretrofit judgment.
 

 We further conclude that the district court properly determined that when Bovis and Bullock Insulation stipulated to the amounts of the pending change orders, those pending change orders became approved change orders. Thus, these change orders, including those that would be considered consequential damages, became part of the contract and were therefore lienable.
 
 [59]
 
 Accordingly, we affirm this portion of the district court’s judgment, plus interest.
 

 Attorney fees and sanctions
 

 Bovis argues that the district court abused its discretion when it awarded Bullock costs and attorney fees because Bullock was not the prevailing party, as the pay-if-paid provision prohibited Bullock Insulation from receiving payment before Bovis was paid. Bovis further contends that it did not hide facts from the court and it asserted in good faith that pay-if-paid provisions had been upheld in other district courts.
 

 This court reviews an award of attorney fees or sanctions for abuse of discretion.
 
 [60]
 
 With respect to the appeal from the post-
 
 *1120
 
 judgment order awarding attorney fees, in light of this opinion, we necessarily vacate the award of attorney fees.
 
 [61]
 
 To the extent that the district court awarded sanctions, we have reviewed the record and conclude that substantial evidence does not support the district court’s conclusion that Bovis defended the action in bad faith. Thus, the district court abused its discretion. Accordingly, we reverse the portion of the district court’s order awarding sanctions.
 

 CONCLUSION
 

 Where the district court creates special interrogatories that result in irreconcilably inconsistent verdicts and the parties fail to object to them before the jury is discharged, the parties do not necessarily waive the right to appeal the judgment based on the inconsistent verdicts. Pursuant to NRCP 49(b), the district court shall not enter judgment on irreconcilably inconsistent verdicts. Therefore, in this case, the district court abused its discretion when it entered judgment on the inconsistent answers to the special interrogatories and the general verdict. Accordingly, we reverse the judgment on the breach of contract claim as it concerns the retrofit issue and remand for a new trial.
 

 We agree with the district court’s ruling that the lien waiver provision was unenforceable and therefore affirm the portion of the district court’s judgment enforcing the lien. Regarding the pay-if-paid provision, we conclude that the district court properly struck down the pay-if-paid provision as unenforceable based upon public policy. With respect to the nonretrofit portion of the judgment, we conclude that the stipulations were valid, thus making the pending change orders part of the contract and lienable. Therefore, we affirm this portion of the district court’s judgment, plus interest. Finally, we vacate the portion of the district court’s order awarding attorney fees, and we reverse the portion awarding sanctions. Accordingly, we remand this matter to the district court for further proceedings consistent with this opinion.
 
 [62]
 

 Maupin, Hardesty, Douglas, Cherry and Saitta, JJ., and Shearing, Sr. J., concur.
 

 [2]
 

 NRAP 40(c)(2).
 

 [3]
 

 The district court consolidated Bullock Insulation’s action against Venetian Resort with another action that Bullock Insulation had filed against appellant the Grand Canal Shops Mall Construction, LLC (Grand Canal Shops). Vene
 
 *1106
 
 tian Resort, Grand Canal Shops, and National Union Fire Insurance Company of Pittsburgh, PA, the bond surety company (collectively Venetian), are appellants in this appeal.
 

 [4]
 

 While at the time of trial, Bovis had not yet been paid by Venetian Resort, it acknowledged in its brief on appeal that it has since been paid.
 

 [5]
 

 Regarding this appeal, Bullock Insulation and Insurance Company of the West are referred to collectively as Bullock.
 

 [6]
 

 See Ross v. Giacomo,
 
 97 Nev. 550, 555, 635 P.2d 298, 301 (1981) (‘ ‘Whether to require a special verdict is a discretionary determination to be made by the trial court.”),
 
 overruled on other grounds by Winston Products Co.
 
 v.
 
 DeBoer,
 
 122 Nev. 517, 524, 134 P.3d 726, 731 (2006).
 

 [7]
 

 Edwards Indus. v. DTE/BTE, Inc.,
 
 112 Nev. 1025, 1036, 923 P.2d 569, 576 (1996).
 

 [8]
 

 Eberhard Mfg. Co. v. Baldwin,
 
 97 Nev. 271, 272-73, 628 P.2d 681, 682 (1981).
 

 [9]
 

 97 Nev. at 272, 628 P.2d at 681-82.
 

 [10]
 

 Id.
 

 [11]
 

 Id.
 
 at 272, 628 P.2d at 682.
 

 [12]
 

 Id.
 

 [13]
 

 Id.
 
 at 273, 628 P.2d at 682.
 

 [14]
 

 Id.
 
 at 272-73, 628 P2d at 682.
 

 [15]
 

 NRCP 1.
 

 [16]
 

 Bernardini v. Rederi A/B Saturnas,
 
 512 F.2d 660, 662 (2d Cir. 1975).
 

 [17]
 

 NRCP 49(b) (emphasis added).
 

 [18]
 

 Both NRCP 49(b) and FRCP 49(b) direct that judgment must not be entered when interrogatory answers are inconsistent with each other and one or more is also inconsistent with the general verdict. However, the two rules differ in their language regarding what the district court should do instead of entering judgment. While NRCP 49(b) states that the court
 
 “may
 
 return the jury for further consideration of its answers and verdict or
 
 may
 
 order a new trial,” FRCP 49(b) directs that the court
 
 “shall
 
 return the jury for further consideration of its answers and verdict or
 
 shall
 
 order a new trial.” (Emphases added.)
 

 [19]
 

 Strauss v. Stratojac Corp.,
 
 810 F.2d 679, 683-84 (7th Cir. 1987) (recognizing the inconsistencies in the special interrogatory answers, but concluding that under the circumstances of the case, the special interrogatories could be harmonized);
 
 see also Schaafsma v. Morin Vermont Corp.,
 
 802 F.2d 629, 634-35 (2d Cir. 1986) (explaining that a district court errs if it fails to grant a new trial “when jury verdicts are logically incompatible”).
 

 [20]
 

 Schaafsma,
 
 802 F.2d at 635 (concluding that, under the circumstances of the case, the purported inconsistent jury findings could be reconciled).
 

 [21]
 

 Id.
 
 at 634 (quoting
 
 Elston
 
 v.
 
 Morgan,
 
 440 F.2d 47, 49 (7th Cir. 1971)).
 

 [22]
 

 15 Nev. 158, 162-63 (1880).
 

 [23]
 

 57 Nev. 153, 157-58, 60 P.2d 220, 221 (1936).
 

 [24]
 

 71 Nev. 329, 291 P.2d 422 (1955).
 

 [25]
 

 Id. at 334, 291 P.2d at 424.
 

 [26]
 

 105 Nev. 592, 781 P.2d 765 (1989).
 

 [27]
 

 Id.
 
 at 594, 781 P.2d at 766-67.
 

 [28]
 

 Id.
 
 at 594, 781 P.2d at 767.
 

 [29]
 

 116 Nev. 575, 3 P.3d 665 (2000).
 

 [30]
 

 Id.
 
 at 582, 3 P.3d at 670.
 

 [31]
 

 Id.
 

 [32]
 

 Id.
 

 [33]
 

 Id. at 583, 3 P.3d at 670.
 

 [34]
 

 109 Nev. 257, 849 P.2d 313 (1993).
 

 [35]
 

 Id.
 
 at 263, 849 P.2d at 316 (quoting
 
 Amoroso Constr. v. Lazovich and Lazovich,
 
 107 Nev. 294, 298, 810 P.2d 775, 778 (1991)).
 

 [36]
 

 Id. at 263, 849 P.2d at 317.
 

 [37]
 

 Id.
 

 [38]
 

 Grand Hotel Gift Shop v. Granite St. Ins.,
 
 108 Nev. 811, 815, 839 P.2d 599, 602 (1992).
 

 [39]
 

 NRS 108.222(l)(a). We note that in 2003, the Legislature amended NRS Chapter 108 to prohibit lien waivers unless such waivers comply with the statutory requirements outlined in NRS 108.2453 and NRS 108.2457. 2003 Nev. Stat., ch. 427, §§ 25-26, at 2590-95. This amendment does not affect our analysis here because it is not retroactive and Bovis and Bullock Insulation entered into the subcontract before 2003.
 
 See McKellar
 
 v.
 
 McKellar,
 
 110 Nev. 200, 203, 871 P.2d 296, 298 (1994) (holding that “[t]here is a general presumption in favor of prospective application of statutes unless the legislature clearly manifests a contrary intent or unless the intent of the legislature cannot otherwise be satisfied”).
 

 [40]
 

 Schofield
 
 v.
 
 Copeland Lumber,
 
 101 Nev. 83, 85, 692 P.2d 519, 520 (1985).
 

 [41]
 

 Las Vegas Plywood v. D & D Enterprises,
 
 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982).
 

 [42]
 

 Wm. R. Clarke Corp. v. Safeco Ins. Co.,
 
 938 P.2d 372, 375-76 (Cal. 1997).
 

 [43]
 

 Id.
 
 at 376 (quoting
 
 Connolly Develop., Inc.
 
 v.
 
 Sup. Ct. of Merced Cty.,
 
 553 P.2d 637, 653-54 (Cal. 1976)). In California, because lien waiver provisions violate public policy, such provisions are valid only if they follow statutory forms.
 
 Id.
 
 (citing Cal. Civ. Code § 3262(d) (West 1993)).
 

 [44]
 

 Connolly Develop., Inc.,
 
 553 P.2d at 653.
 

 [45]
 

 119 Nev. 404, 407, 75 P.3d 384, 386 (2003).
 

 [46]
 

 Id.
 
 at 408, 75 P.3d at 387.
 

 [47]
 

 Id.
 
 at 409, 75 P.3d at 387.
 

 [48]
 

 See Wm. R. Clarke Corp.
 
 v.
 
 Safeco Ins. Co.,
 
 938 P.2d 372, 376 (Cal. 1997) (discussing statutory forms for lien waiver provisions that do not violate public policy if the waiver is “in conjunction with payment, or a promise of payment”).
 

 [49]
 

 Although the district court concluded that all lien waiver provisions violate public policy and are thus unenforceable, whether a lien waiver provision is enforceable, as set forth above, depends on a case-by-case analysis of whether it violates public policy, for example, by waiving the lien right regardless of whether the contractor receives payment. As the district court reached the correct result, we nonetheless affirm its judgment enforcing the lien.
 
 See Sengel v. IGT,
 
 116 Nev. 565, 570, 2 P.3d 258, 261 (2000) (affirming the district court decision because it reached the correct result, even though the district court applied the wrong standard).
 

 [50]
 

 We note that in 2001, the Legislature amended NRS Chapter 624 to include the prompt payment provisions contained in NRS 624.624 through 624.626. Pay-if-paid provisions entered into subsequent to the Legislature’s amendments are enforceable only in limited circumstances and are subject to the restrictions laid out in these sections. 2001 Nev. Stat., ch. 341, §§ 5-6, at 1615-18. This amendment does not affect our analysis here because it is not retroactive.
 
 See McKellar v. McKellar,
 
 110 Nev. 200, 203, 871 P.2d 296, 298 (1994).
 

 [51]
 

 See Wm. R. Clarke Corp.,
 
 938 P.2d at 376 (concluding that a pay-if-paid provision “has the same practical effect as an express waiver of [mechanic’s lien] rights”).
 

 [52]
 

 See Schofield
 
 v.
 
 Copeland Lumber,
 
 101 Nev. 83, 85, 692 P.2d 519, 520 (1985) (explaining that “[t]he object of the lien statutes is to secure payment to those who perform labor or furnish material to improve the property of the owner”).
 

 [53]
 

 Second Bapt. Ch. v. Mt. Zion Bapt. Ch.,
 
 86 Nev. 164, 172, 466 P.2d 212, 217 (1970) (citation omitted).
 

 [54]
 

 EDCR 7.50; DCR 16;
 
 see Casentini
 
 v.
 
 Hines,
 
 97 Nev. 186, 187, 625 P.2d 1174, 1175 (1981) (concluding that the district court erred in entering judgment on a stipulation that was not reduced to writing or entered into the minutes of the court in the form of an order).
 

 [55]
 

 Taylor
 
 v.
 
 SIIS,
 
 107 Nev. 595, 598, 816 P.2d 1086, 1088 (1991).
 

 [56]
 

 We note that in 2003, the Legislature amended NRS 108.239(5) such that it is now codified as NRS 108.239(7). 2003 Nev. Stat., ch. 427, § 43, at 2609.
 

 [57]
 

 California Commercial v. Amedeo Vegas I,
 
 119 Nev. 143, 148, 67 P.3d 328, 332 (2003).
 

 [58]
 

 See Dermody v. City of Reno,
 
 113 Nev. 207, 210-11, 931 P.2d 1354, 1357 (1997) (deeming an argument to be waived if it was not raised below).
 

 [59]
 

 See Amedeo,
 
 119 Nev. at 148, 67 P.3d at 332 (explaining that approved change orders become part of the contract price and are therefore lienable).
 

 [60]
 

 Simonian
 
 v.
 
 Univ. & Cmty. Coll. Sys.,
 
 122 Nev. 187, 196, 128 P.3d 1057, 1063 (2006) (reviewing an award of sanctions for abuse of discretion);
 
 U.S. Design & Constr.
 
 v.
 
 I.B.E.W. Local 357,
 
 118 Nev. 458, 462, 50 P.3d 170, 173 (2002) (reviewing an award of attorney fees for an abuse of discretion).
 

 [61]
 

 In view of this decision, we remand the matter of costs to the district court for it to reassess costs in a manner consistent with this opinion.
 

 [62]
 

 We have considered the parties’ other arguments and conclude that we do not need to address them.