132 Nev., Advance Opinion 45

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF THE PERSON AND ESTATE OF JEAN RUTH ECHEVARRIA, AN ADULT WARD. | No. 65598 |

MICHAEL A. ECHEVARRIA,
Appellant,
vs.
ROBERT L. ANSARA; AND ANGEL
ECHEVARRIA,
Respondents.

**FILED**

JUN 30 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order in a guardianship proceeding under NRS Chapter 159, authorizing the distribution of estate funds to pay administrative claims. Eighth Judicial District Court, Family Court Division, Clark County; Charles J. Hoskin, Judge.

*Vacated and remanded.*

Karen K. Wong, Las Vegas,
for Appellant.

Trent, Tyrell & Phillips and Elyse M. Tyrell, Las Vegas,
for Respondent Robert L. Ansara.

Solomon Dwiggins & Freer, Ltd., and Mark A. Solomon, Las Vegas,
for Respondent Angel Echevarria.

BEFORE HARDESTY, SAITTA and PICKERING, JJ.

8/24/16: Corrected per letter to publishers. CT

16-20451

*OPINION*

By the Court, SAITTA, J.:

This opinion addresses whether NRS 159.1365 governs the distribution of funds in an operating account tied to real property. We hold that the determination of whether NRS Chapter 159 or a district court's distribution order applies requires a finding by the district court identifying the source of the funds. If the source of the funds is the sale of real property, NRS Chapter 159 applies. If the source of the funds was not the sale of the California property, the district court must determine whether its distribution order or NRS 159.103, NRS 159.105, and NRS 159.183 apply.

This opinion further addresses the requirements for a valid stipulation. We hold that a valid stipulation requires mutual assent to its terms and either the presence of all interested parties or a signed writing indicating assent by the party against whom the stipulation is offered.

*FACTUAL AND PROCEDURAL HISTORY*

Robert Ansara is the successor guardian of the estate of Jean Ruth Echevarria, having been appointed to serve in that capacity in 2007, and is also the successor trustee of Jean's living trust. Angel Echevarria is Jean's daughter and previous guardian. Michael Echevarria is Jean's son and judgment creditor, pursuant to an earlier judgment against his mother and her trust entered in the state of Tennessee, which he later domesticated in California and Nevada.[1] Michael's judgment lien was in the amount of $625,814.

---

[1]In the interest of clarity, because some of the parties involved share a last name, they are referred to by their first names.

During the course of the guardianship proceedings, the district court entered several orders authorizing the payment of Ansara's guardian fees and costs, as well as payment of attorney fees and costs incurred by Elizabeth Brickfield of Lionel Sawyer & Collins and Trent, Tyrell & Associates, on behalf of the original and successor guardian and trustee. This included a district court distribution order entered on August 15, 2012.

Ansara also filed a report with the district court regarding Jean's trust asset, in which it was reported that an offer had been submitted and that it had been accepted by Ansara for the purchase of real property located in California, in which Jean had a partnership interest. Ansara indicated to the district court that Michael's judgment lien from an earlier judgment that he obtained against Jean and her trust in the state of Tennessee would be partially satisfied from the proceeds of the sale. Ansara further informed the court that Jean would not receive any funds from the sale but that Michael had agreed to assist in funding the guardianship estate so as to provide for his mother's basic needs.

The district court approved and ratified Ansara's plan to sell the California property and authorized and directed the sale thereof. Ansara stated that after transaction costs, satisfaction of the existing mortgage, and an IRS lien, the remaining sale proceeds of approximately $200,000 were to be paid to Michael to partially satisfy his judgment claim.

After the sale of the California property had closed, Angel petitioned the district court for distribution of money held in an operating account associated with the California property. The district court held a hearing on the distribution petition. Ansara, Brickfield, and Ansara's

SUPREME COURT
OF
NEVADA

(O) 1947A

attorney Elyse M. Tyrell of Trent, Tyrell & Associates were present for the hearing. Michael did not attend the hearing. Ansara represented that there were funds currently held in the operating account and that he objected to Michael receiving any of those funds as Michael had already received the net proceeds from the sale of Jean's property. Ansara proposed that he, Brickfield, and Tyrell distribute the funds amongst themselves, and they stipulated to an agreement on the appropriate distribution.

Following the hearing, the district court entered the stipulation and order, without obtaining Michael's participation, signature, or agreement. On appeal, Michael raises the following issues: (1) whether the district court erred by failing to distribute the operating account funds in accordance with NRS 159.1365; and (2) whether the district court erred by approving the stipulation without Michael's participation, signature, or agreement.

## DISCUSSION

*The district court erred by failing to identify the source of the funds in the operating account*

A district court's factual determinations will be upheld if not clearly erroneous and if supported by substantial evidence. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009).

Michael argues that the source of the funds in the operating account was the sale of the California real property, and therefore, the distribution of those funds is governed by NRS 159.1365. In the alternative, Michael argues that the funds should be distributed in accordance with the district court's August 15, 2012, order. Conversely, Ansara argues that the funds were not from the sale of the real property,

and therefore, NRS 159.1365, regarding distribution of money from the sale of a ward's real property, does not apply to them.

The record is devoid of any indication of the source of the funds in the operating account. The transcript of the district court's hearing on the distribution petition; the minutes of the district court; and the August 15, 2012, order suggest that neither the guardianship commissioner nor the district court reached this dispositive issue. Furthermore, neither party provides any evidence regarding the source of funds, and the purchase agreement for the sale of the California property is silent on whether any of the proceeds from the sale would be deposited into the operating account. Therefore, the district court's finding that Ansara, Brickfield, and Tyrell could stipulate as to the distribution terms of the funds in the operating account was made in clear error and was not supported by substantial evidence.

*If the funds in the operating account are proceeds from the sale of Jean's real property, NRS 159.1365 governs*

NRS 159.1365, dealing with the sale of a ward's property, states:

> If real property of the estate of a ward is sold that is subject to a mortgage or other lien which is a valid claim against the estate, *the money from the sale must be applied in the following order*:
>
> 1. To pay the necessary expenses of the sale.
>
> 2. To satisfy the mortgage or other lien, including, without limitation, payment of interest and any other lawful costs and charges. If the mortgagee or other lienholder cannot be found, the money from the sale may be paid as ordered by the court and the mortgage or other lien shall be deemed to be satisfied.

3. To the estate of the ward, unless the court orders otherwise.

(Emphasis added.)   Thus, if the funds in the operating account were proceeds from the sale of Jean's real property, NRS 159.1365 applies to those funds and dictates the order in which those funds must be distributed.[2]

Here, Jean's property located in California was sold with court approval for $6,570,000.  The record indicates that Ansara complied with NRS 159.1365.  Specifically, Ansara reported that the transaction costs, satisfaction of the existing mortgage, and the IRS lien were paid first from the sale proceeds.  The remainder of the sale proceeds, in the amount of $200,000, was paid to Michael to partially satisfy his judgment claim of $625,814.

---

[2]Ansara argues that Michael's judgment was not properly domesticated in this jurisdiction pursuant to NRS 17.350 and, as such, was not a valid lien and would be excluded from the payment priority outlined in NRS 159.1365.  This argument is without merit.  Michael complied with all of the requirements of NRS 17.350.  First, he filed an exemplified copy of the Tennessee judgment, attested "to be a true and perfect copy of the original instrument on file in this case."  Second, he filed an affidavit on June 27, 2007, including the judgment debtor's name and last known address, a statement that the foreign judgment was valid and enforceable, and the extent to which it had been satisfied.  Third, Michael filed a notice of lien and judgment in Clark County on May 16, 2007, to all interested persons, including Angel, who was Jean's guardian at the time.  Although the record indicates that this filing contained an illegible exhibit containing the exemplified copy of the Tennessee judgment, the record also indicates that the guardianship court recognized the Tennessee judgment and that counsel for Jean's successor guardian, Ansara, acknowledged as much.  Furthermore, in 2013, Michael filed an affidavit of renewal of judgment pursuant to NRS 17.214 and filed a notice of levy for enforcement of judgment with the district court.  As such, we hold that Michael's judgment was properly domesticated.

However, the funds in the operating account were not distributed to Michael. If the funds in the operating account were sale proceeds from Jean's real property, those funds should have also been distributed to Michael pursuant to NRS 159.1365 because the sale proceeds only partially satisfied Michael's judgment claim.

*If the source of the funds was not the sale of the California property, then the August 15, 2012, distribution order partially governs*

If the source of the funds was not the sale of the California property, the August 15, 2012, distribution order governs to the extent that the source of the funds was the rental income from the real property.

On August 15, 2012, the district court directed Ansara:

> to utilize up to $3,000.00 of [Jean's] monthly income, to satisfy, on a pro-rated basis, the following expenses, until the same are paid in full, or until there is no income with which to satisfy the same, to-wit:
>
> a. Michael Echevarria, in the original amount of $625,814.00 + 10% interest per year, for a judgment which was secured by him.
>
> b. Elizabeth Brickfield, in the amount of $103,032.10, for attorney[ ] fees and costs.
>
> c. Trent, Tyrell & Associates, in the amount of $13,203.25, as and for attorney[ ] fees and costs.
>
> d. Robert L. Ansara, in the amount of $20,771.75, as and for the Guardian's fees and costs, as well as Successor Trustee's fees and costs.

In his petition for his instructions preceding the August 15, 2012, order, Ansara indicated that since Jean's trust was generating approximately $3,000 in excess income per month, Ansara requested that he be authorized to use up to that amount to satisfy the payments owed to him; Michael; Brickfield; and Trent, Tyrell & Associates. In his status narrative filed near the time of the order, as part of his fourth account and

7

report, Ansara reported that Jean's income was solely comprised of social security and rental income from the real property. He further reported that "so long as [the property] remains fully leased, it will continue to augment Jean's monthly income."

Therefore, the August 15, 2012, order only governs if the funds in the operating account are attributable to the excess monthly rental income that Jean received prior to the sale of the California property. This is because Jean's income was solely comprised of social security and rental income from the real property and because she no longer owns the real property. Indeed, the operating account is acknowledged to be the final asset of any value in Jean's estate.

*If the source of the funds is neither the sale of real property nor Jean's excess monthly income, then NRS 159.103, NRS 159.105, and NRS 159.183 apply*

It is entirely possible for the funds in the operating account to be attributable to something other than the sale of real property or Jean's excess monthly income. For example, the operating account may have been holding money that was originally deposited to cover any necessary maintenance that the property needed. If the funds from the operating account are determined to be from a source other than the sale of real property or Jean's excess monthly income, the district court must determine distribution in accordance with NRS 159.103, NRS 159.105, and NRS 159.183. *See* NRS 159.103 (dealing with claims against the estate of the ward); NRS 159.105 (dealing with payment of claims of a guardian and claims for attorney fees); NRS 159.183 (dealing with compensation and expenses of a guardian).

*The district court erred by approving the stipulation*

"This court has recognized that [valid] [s]tipulations are of an inestimable value in the administration of justice, and valid stipulations are controlling and conclusive and both trial and appellate courts are bound to enforce them." *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1118, 197 P.3d 1032, 1042 (2008) (second alteration in original) (internal quotations omitted). A valid stipulation requires "mutual assent to its terms and either a signed writing by the party against whom the stipulation is offered or an entry into the court minutes in the form of an order." *Id.*; *see also Taylor v. State Indus. Ins. Sys.*, 107 Nev. 595, 598, 816 P.2d 1086, 1088 (1991) ("A stipulation is an agreement made before a judicial tribunal which requires, as does a contract, the assent of the parties to its terms.").

Here, although Michael had notice of the hearing during which the stipulation was created, he was not present at that hearing. The record does not show that Michael, as the party against whom the stipulation is now being offered, assented to the terms of the parties' stipulation. Therefore, we hold that the district court erred by approving the stipulation without Michael's presence or signature indicating Michael's assent.

It is axiomatic that a valid stipulation requires mutual assent by *all* interested parties. Without mutual assent, the stipulation is void.

*CONCLUSION*

We, therefore, vacate the district court order and remand for further proceedings. Upon remand, the district court will determine the source of funds in the operating account. If the source of the funds was the sale of the California property, then NRS 159.1365 applies. If the source of the funds was not the sale of the California property, the August

SUPREME COURT
OF
NEVADA

(O) 1947A

15, 2012, order applies, to the extent that the source of the funds was the rental income from the real property. Finally, if the funds from the operating account are determined to be from a source other than the sale of real property or Jean's excess monthly income, NRS 159.103, NRS 159.105, and NRS 159.183 apply.

_____, J.
      Saitta

We concur:

_____, J.
Hardesty

_____, J.
Pickering

SUPREME COURT
OF
NEVADA